**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSHUA ZHANG, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GAOTU TECHEDU INC. F/K/A GSX TECHEDU INC., XIANGDONG CHEN and NAN SHEN,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joshua Zhang ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Gaotu Techedu Inc. f/k/a GSX Techedu Inc. ("Gaotu" or the

1

"Company")[1], and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Gaotu American depository shares ("ADSs") between March 5, 2021 and July 23, 2021, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of

---

[1] Before June 4, 2021, Gaotu was known as GSX Techedu Inc.

interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Gaotu securities during the Class Period and was economically damaged thereby.

7.  Defendant Gaotu purports to be a technology-driven education company, providing online K-12 after-school tutoring services in the People's Republic of China. Gaotu is incorporated in the Cayman Islands, and maintains its headquarters at Tower C, Beyondsoft Building, 7 East Zone, 10 Xibeiwang East Road, Haidian District, Beijing 100193, People's Republic of China. Gaotu ADSs were listed on the New York Stock Exchange ("NYSE") under ticker symbol GSX before June 4, 2021 and GOTU thereafter.

8.  Defendant Xiangdong Chen ("Chen") is and was at all pertinent times Chairman of Gaotu's Board of Directors and the Company's Chief Executive Officer.

9.  Defendant Nan Shen ("Shen") is and was at all pertinent times the Chief Financial Officer of Gaotu.

10. Defendants Chen and Shen are sometimes referred to herein as the "Individual Defendants."

11. The Individual Defendants:

    (a)   directly participated in the management of the Company;

    (b)   was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
## Materially False and Misleading
## Statements Issued During the Class Period

15. On March 5, 2021, the Company held a call to discuss its Q4 2020 earnings ("Q4 2020 Earnings Call"). Asked about revenue growth targets, Defendant Chen stated:

> In 2021, we will continue to expand our recruiting and training of the star instructors, expand our efforts on content, product and the technology developments, maintain effective growth strategy on lifetime value basis, optimize our regional efficiency and effectiveness, and further improve our organizational capabilities and efficiency.

4

> We are confident that we will continue to excel in terms of operating efficiency in 2021.And certainly, we are pretty confident about our growth rate of full-year 2021. So we hope for 2021, the full-year growth rate is going to be in the range of 70% to 80%.
>
> In 2020, in terms of balancing between the ROI and the scale, we are doing a really great job. And in 2021, we are confident we do also a good job.

16. During the call, an analyst asked Defendants about the potential for new regulations on after-school tutoring. Defendant Shen responded to the analyst's question:

> And as you mentioned, since January, the government has taken a closer look at the marketing campaign of the online education industry, and actually we highly welcome and proactively embrace the change and we probably support the government's current and the following regulator measures. We believe the policy will benefit the whole industry in a long run. For instance, firstly, the potential customer acquisition cost is likely to decline, and this is consistent with our observation in January and February. So in the past two months, the unit sales leads price we acquired from social media platforms were much lower compared to November and December in 2020. And that's basically we are the last the company to join the campaign to sponsor TV programs or like other shows or do like best station advertisement. From the bottom of our heart, we really wanted to have effective growth other than that burning money. So if something just came out, we will be delightful and I think it's good to our company because we are a operations-orientated company and we are not a traffic-oriented company.
>
> And the second is like the management will increase the trust of the students and the parents towards online education campaign. We really wanted the engagement between the parents and us and students and us as peaceful without creating an anxiety. And talking about that in itself, education also should not only help students to improve their academic performance, but more importantly, should foster their academic capability, develop good learning habits, and if we really have the capital, we really want to invest in upgrading our products, other than spend them in sales and the marketing.

17. On March 9, 2021, Irefresh Future Ltd, an entity which held GOTU executives' GOTU ADSs, filed a Form 144 for the sale of 1.335 million ADSs, which would have a market value of $118.3 million based on the closing price of GOTU ADSs on March 9.

18. On May 26, 2021, the Company held a call to discuss its Q1 2021 earnings. On the call, Defendants once again denied that regulation would have any impact on GSX's operations:

5

**Q:**
>Hi, Larry. Hi, management. Thanks for the presentation. This is Mark Li from Citi. May I ask given the recent update in our regulation from the government, what do we see is the potential impact on our operations for the rest of the quarters or for the next year? Could you share a bit more color? And also my second question is for our advertising ROI, could you share a little bit more color on the ROIs in '21? And what do we think going forward? Thank you.

**DEFENDANT SHEN**
>Thanks, Mark. First question about the regulation impact. So we have been following the opinions on regulating after-school tutoring institutions in 2018 and further opinions on regulating after-school -- online after-school institutions issued in 2019 in the past years. And recently, the government has issued regulatory guidance on several aspects of online education, including, first, prepaid tuition fee management. On May 21, four departments in Beijing jointly released a guideline, listing out specific requirement on the tuition fee collected in advance, including tuition fee coverage period, advance tuition fee collection timing and tuition fee monitoring. They provided very detailed guidelines.
>
>And second, about advertisement, our companies should follow the law of advertising and the law of -- against and fire compensation. The department also provided a list about what the company should now do in commercial. It's a very detailed list.
>
>Also, regulators provided guidelines on our teaching content, course format, course scheduling, teacher qualifications, homework and student rest time, et cetera. So to better implement these regulations, we have proactively activated a cross-department compliance team within the company. This team consists of all senior management teams, and we have organized several rounds of meetings, initiate rounds of study on the new regulations. We've taken down a non-compliant advertisement and adjusted our homework procedures and adjusted the class schedule to meet the requirement from all of those regulators. And with regard to instructor qualifications, except for check the paper, the certificate of the teachers' qualifications, we also cross check the teacher qualifications online and from other channels.
>
>So on May 21, the same day was the prepaid tuition fee management rule, the Central Commission for Comprehensively Deepening Reform launched its 19th meeting, inversely also approved the opinion on reducing burden from homework and apps for tutoring for compulsory education students, that is called (Foreign Language). So we haven't received the specific accountant yet. Once the opinion is published, we will immediately take measures to comply in all levels.
>
>So after school tutoring is part of the education industry and education, especially for K-12 education should focus on the social impact and core values. The regulation provided timely and clearly directions for the industry. We will

6

proactively embrace the policy and take solid actions and closely monitor the following execution. We believe only when other companies comply with the government policy at the highest level, the whole industry can achieve a lasting healthy and sustainable development.

**DEFENDANT CHEN**

(Foreign Language) I want to add several more points. The first one is (inaudible) for premium education for customized education from students and parents is eternal, always exist. Secondly, the benefits brought by online education at very affordable price will provide a secure for equal access to the education. Thirdly, the online education is able to collect data with all assets from the students. So it's easier for online education to provide more customized solutions for each student. So insured, me personally, I am very optimistic about the future of online education and I believe that as long as we give education with our true heart, with our consciousness, I believe this sector will have a very long term and sustainable development.

19. The statements contained in ¶¶ 15-16 and 18 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose, among other things that: (1) China was barring tutoring for profit in core school subjects and the policy change would restrict foreign investment in a sector that had become essential to success in Chinese school exams; and (2) the impact such regulations would have on Gaotu's operations and profitability and the value of Company securities.

20. On July 23, 2021, *Reuters* reported that:

SHANGHAI, July 23 (Reuters) - China is barring tutoring for profit in core school subjects to ease financial pressures on families that have contributed to low birth rates, news that sent shockwaves through its vast private education sector and share prices plunging.

The policy change, which also restricts foreign investment in a sector that had become essential to success in Chinese school exams, was contained in a government document widely circulated on Friday and verified by sources.

> The move threatens to decimate China's $120 billion private tutoring industry and triggered a heavy selloff in shares of tutoring firms traded in Hong Kong and New York including New Oriental Education & Technology Group and Koolearn Technology Holding Ltd.
>
> All institutions offering tutoring on the school curriculum will be registered as non-profit organisations, and no new licences will be granted, according to the document, which says it was distributed by China's State Council, or cabinet, to local governments and is dated July 19.

21. On this news, the price of Gaotu's ADSs fell 63.3% to close at $3.52 per ADS on July 23, 2021, damaging investors.

22. On July 26, 2021, the Company refused to comment on the media news of the regulations when it filed its Form 6-K with the SEC signed by CFO Shen, stating, in pertinent part, as follows:

**Gaotu Techedu Inc. Responds to Media Reports**

> BEIJING, July 23, 2021 Gaotu Techedu Inc. (Gaotu or the Company) (NYSE: GOTU), a leading online large-class after-school tutoring service provider in China, today noted that certain English and Chinese language media outlets reported that the PRC regulators are considering a new set of regulations concerning after-school tutoring service related to school subjects taught in China's compulsory education system. The regulations have not been published, and the Company has not received official notification of the regulations. It is the Company's policy not to comment on market speculations.

23. On November 6, 2021, the Financial Times published an article entitled "How China's tech bosses cashed out at the right time-Sales of US-listed shares came ahead of significant moves in price." It reported, in pertinent part, as follows:

> In China, there is no clearer sell-sign than when Xi Jinping, the Chinese president, starts personally attacking an industry.
>
> So when Xi complained in March that relentless home-schooling was a "stubborn disease" that was putting too much pressure on Chinese children and their parents, the heads of at least two Chinese tutoring companies started selling their shares in New York.

> In one previously unreported trade, a shell company holding shares for executives at GSX Techedu, whose market capitalisation in New York was about $24bn at the time, launched the sale of shares worth as much as $119m just three days after Xi spoke.
>
> The sale is among hundreds of records reviewed by the Financial Times that provide one of the first looks at how and when executives at China's biggest New York-listed tech companies trade their shares.
>
> In public, Larry Chen, the chief executive of GSX, who does not appear to be linked to the shell company that sold, expressed confidence in his business, promising at the end of March to buy $50m of shares with his own money.[2]
>
> But one person close to GSX said its leaders were aware at the time of the trade that Beijing was considering stricter regulations on the industry.
>
> By July, the Chinese government had banned the entire sector from making profits, crashing the share prices of all the major tutoring companies. Today, the block of GSX shares that was put up for sale in March would be worth only $4m. Chen does not appear to have yet fulfilled his $50m pledge.
>
> GSX (which has since rebranded as Gaotu Techedu) declined to comment on the share sale and said any share purchases by Chen would be noted in public filings. None has so far occurred.

24. As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons other than Defendants who acquired Gaotu ADSs publicly traded on the NYSE during the Class Period, and who were

---

[2] No purchases were ever made.

9

damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Gaotu, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Gaotu securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Gaotu;

10

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Gaotu to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Gaotu securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

30. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Gaotu ADSs met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, Gaotu filed periodic public reports;

- Gaotu regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Gaotu securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Gaotu was followed by securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

31. Based on the foregoing, the market for Gaotu securities promptly digested current information regarding Gaotu from all publicly available sources and reflected such information in the prices of the ADSs, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

32. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

33. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34. This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

35. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Gaotu securities during the Class Period.

37. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Gaotu were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Gaotu, their control over, and/or receipt and/or modification of Gaotu's allegedly materially misleading statements, and/or their

13

associations with the Company which made them privy to confidential proprietary information concerning Gaotu, participated in the fraudulent scheme alleged herein.

38. Individual Defendants, who are or were the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Gaotu personnel to members of the investing public, including Plaintiff and the Class.

39. As a result of the foregoing, the market price of Gaotu securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Gaotu securities during the Class Period in purchasing Gaotu securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

40. Had Plaintiff and the other members of the Class been aware that the market price of Goatu securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Gaotu securities at the artificially inflated prices that they did, or at all.

41. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

42. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Gaotu securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. During the Class Period, the Individual Defendants participated in the operation and management of Gaotu, and conducted and participated, directly and indirectly, in the conduct of Gaotu's business affairs. Because of their senior positions, they knew the adverse non-public information about Gaotu's false financial statements.

45. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Gaotu's financial condition and results of operations, and to correct promptly any public statements issued by Gaotu which had become materially false or misleading.

46. Because of their positions of control and authority as senior officers or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Gaotu disseminated in the marketplace during the Class Period concerning Gaotu's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Gaotu to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Gaotu within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Gaotu securities.

47. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Gaotu.

15

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 30, 2022  **THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiff*