UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------ x
JOSHUA ZHANG, Individually and on behalf : 
of all other similarly situated, :
 :
    Plaintiff, :
 :
v. : 22-cv-7966 (PKC) (CLP)
 :
GAOTU TECHEDU INC. F/K/A GSX :
TECHEDU INC., XIANGDONG CHEN, and :
NAN SHEN, :
 :
    Defendants. :
------------------------------------ x

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THE
<u>MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

        SKADDEN, ARPS, SLATE,
          MEAGHER & FLOM LLP

        Scott D. Musoff
        Robert A. Fumerton
        Michael C. Griffin
        Judith A. Flumenbaum
        One Manhattan West
        New York, New York 10001
        Phone:  (212) 735-3000
        Fax:    (212) 735-2000

        *Counsel for Defendants Gaotu Techedu*
         *Inc., Xiangdong Chen and Nan Shen*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT.............................................................................................................................2

I. PLAINTIFFS FAIL TO PLEAD A MATERIAL MISREPRESENTATION....................2

II. PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER................7

III. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ...................................................10

CONCLUSION........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                             **Page**

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995)............................................................................................3

*Banerjee v. Zhangmen Education Inc.*,
    No. 21-CV-9634 (JPO), 2023 WL 2711279 (S.D.N.Y. Mar. 30, 2023) ................ 2, 4, 5, 6

*In re Barrick Gold Corp. Securities Litigation*,
    341 F. Supp. 3d 358 (S.D.N.Y. 2018) .......................................................................4

*Christine Asia Co. v. Ma*,
    718 F. App'x 20 (2d Cir. 2017)..................................................................................3

*Dagan Investments, LLC v. First High-School Education Group Co.*,
    No. 22-cv-3831 (JGK), 2023 WL 8452223 (S.D.N.Y. Dec. 6, 2023)............................4, 5

*In re Didi Global Inc. Securities Litigation*,
    No. 21-cv-05807 (LAK), 2024 WL 1119483 (S.D.N.Y. Mar. 14, 2024)..........................6

*Financial Guaranty Insurance Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015)....................................................................................10

*Freudenberg v. E*Trade Financial Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010) .......................................................................3

*Garnett v. RLX Technology Inc.*,
    632 F. Supp. 3d 574 (S.D.N.Y. 2022),
    *aff'd sub nom. Tseng v. De Vries*, No. 22-2787-cv,
    2023 WL 8073087 (2d Cir. Nov. 21, 2023)...............................................................2

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011) .......................................................................9

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985)....................................................................................3

*In re Keyspan Corp. Securities Litigation*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) .......................................................................8

*Kwalbrun v. Glenayre Technologies, Inc.*,
    201 F.3d 431 (2d Cir. Dec. 16, 1999).....................................................................2, 5

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
    797 F.3d 160 (2d Cir. 2015)....................................................................................10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
  No. 22-1165, 2024 WL 1588706 (U.S. Apr. 12, 2024) ...................................................... 5

*New Orleans Employees Retirement System v. Celestica, Inc.*,
  455 F.App'x 10 (2d Cir. 2011) ........................................................................................... 9

*In re Nokia Oyj (Nokia Corp.) Securities Litigation*,
  423 F. Supp. 2d 364 (S.D.N.Y. 2006) .............................................................................. 10

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ......................................................................................... 6, 10

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
  575 U.S. 175 (2015) ....................................................................................................... 4, 7

*In re Piedmont Lithium Inc. Securities Litigation*,
  No. 21-CV-4161 (OEM) (PK), 2024 WL 197751 (E.D.N.Y. Jan. 18, 2024) ...................... 8

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014),
  *overruled on other grounds by*
  *City of Dearborn Heights Act 345 Police & Fire Retirement System v.*
  *Align Technology, Inc.*, 856 F.3d 605 (9th Cir. 2017) ........................................................ 9

*Ross v. Port Chester Housing Auth.*,
  No. 17-CV-4770, 2019 WL 4738941, at *7 (S.D.N.Y. Sept. 27, 2019) ......................... 3, 7

*Strougo v. Barclays PLC*,
  105 F. Supp. 3d 330 (S.D.N.Y. 2015) ................................................................................ 9

*Sun v. TAL Education Group*,
  No. 22-cv-01015 (ALC), 2023 WL 6394413 (S.D.N.Y. Sept. 29, 2023) ..................... 9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ......................................................................................................... 10

*In re Wells Fargo & Co. Securities Litigation*,
  No. 1:20-cv-04494-GHW, 2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021) ........................ 3

## PRELIMINARY STATEMENT[1]

The undisputed chronology of events in this case confirms Plaintiffs cannot state a claim as a matter of law. Plaintiffs *concede* that President Xi Jinping's calls for the Chinese government to "study and solve" "persistent" issues facing the private after-school tutoring industry—the catalyst that ultimately resulted in the Double Reduction Regulations—occurred on March 6, 2021, a day *after* the start of the Class Period. And there is no dispute that the public criticisms sparked widespread uncertainty, as the Double Reduction Regulations were not adopted until *more than two months later* on May 21, 2021. Furthermore, the Chinese government did not release the contents of the Regulations for *two more months*, on July 24, 2021. Plaintiffs fail to point to particularized facts that demonstrate the Company was aware of the ban on private after-school tutoring—an unprecedented shift that some called a "death knell" for the industry—any earlier than the industry as whole.

The Opposition ignores much of this publicly known timeline, including, critically, the date the Regulations were adopted (May 21, 2021). The reason for Plaintiffs' tactic is obvious: they cannot deny that it is impossible for Defendants to have known the contents of the Regulations prior to this date, as the Regulations *did not yet exist*. But Plaintiffs cannot ignore dates alleged in their own Complaint simply because they defeat their claims. The Opposition confirms the AC should be dismissed in its entirety with prejudice.

First, Plaintiffs fail to plead falsity. Most challenged statements were made *months before* the adoption of the Double Reduction Regulations, and thus could not have disclosed what *did not yet exist*. Nor can Plaintiffs plead falsity with respect to the other challenged statements, as

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Opening Brief" or "Br"). "Opposition" or "Opp." refers to Plaintiffs' Opposition to Defendants' Motion to Dismiss. "Defendants" refers to all named Defendants in this Action. Defendants Xiangdong Chen and Nan Shen seek to join the Opening Brief and this reply.

Plaintiffs' conclusory assertion that Defendants knew but failed to disclose the contents of the Regulation is based on vague and unparticularized claims belied by more specific allegations in their own Complaint.  At most, the Complaint shows Defendants knew only what the market did—that the Chinese government was considering heightened regulations—but Defendants were not in a position (and had no duty) to speculate on the form or impact of the as-yet-unknown Regulations.

Second, Plaintiffs fail to plead the requisite "strong inference" of scienter.  Plaintiffs' allegations of "insider sales" by Irefresh are insufficient to show motive, as they do not plead that *any* of the Individual Defendants' shares were sold.  Regardless, the sales could not possibly be based on nonpublic information relating to the Regulations, which had not even been drafted at the time.  Plaintiffs also fail to plead recklessness, as they cannot specify any report, meeting, or moment in time when Defendants gained prior access to the Regulations' contents.  Rumors of impending (but unspecified) regulations were also all contemporaneously reported in the media, confirming the more compelling nonculpable inference that Defendants' knowledge was as limited as the market's.

Third, Plaintiffs fail to plead loss causation.  The Opposition confirms their losses were not caused by a fraudulent omission, but by a marketwide event impacting the entire industry.

## ARGUMENT

### I.  PLAINTIFFS FAIL TO PLEAD A MATERIAL MISREPRESENTATION

It is well established that "[c]ompanies subject to government regulation are not required to speculate or foresee coming regulation or its potential effect on the company." *Kwalbrun v. Glenayre Techs., Inc.*, 201 F.3d 431 (2d Cir. 1999); *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 604 (S.D.N.Y. 2022), *aff'd sub nom. Tseng v. De Vries*, 2023 WL 8073087 (2d Cir. Nov. 21, 2023); *Banerjee v. Zhangmen Educ. Inc.*, 2023 WL 2711279, at *9 (S.D.N.Y. Mar. 30, 2023). Here, most of the challenged statements were made on March 5, 2021 and April 26, 2021—*months*

2

*before* the Double Reduction Regulations were even adopted on May 21, 2021. (*See* AC ¶¶ 143-63.) The Opposition does not dispute (and thus concedes) that Defendants had no duty to predict these Regulations prior to their adoption. (*See* Opp. at 12-13.); *See, e.g.*, *Ross v. Port Chester Housing Auth.*, 2019 WL 4738941, at *7 (S.D.N.Y. Sept. 27, 2019) ("the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claim."). Hence, these claims fail as a matter of law.

Although that concession alone is fatal to Plaintiffs' claims, the Opposition advances arguments that ignore the timeline alleged in the Complaint, in a futile attempt to salvage claims that are logically impossible. Plaintiffs argue that on March 5, 2021—*more than two months before* the Regulations were adopted—Defendants touted "the purported 'benefit[s]' of . . . the DRR" in an attempt to "outweigh" public reports of President Xi Jinping's March 6, 2021 statements criticizing the after-school tutoring industry, which Plaintiffs *concede* were not made until the next day. (Opp. at 9-10.) Absent a crystal ball, Defendants could not have discussed regulations that *did not yet exist* and could not have misled investors about "the Chinese government's negative position" that, at the time, had not even been articulated. (*Id.* at 10.) *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995).[2] In truth, the statement had nothing to do with the Double Reduction Regulations. Rather, the statement referred to prior regulatory actions relating to marketing. (*See* AC ¶ 144 ("[S]ince January, the government has taken a closer look at the marketing campaign of the online education industry, and we actually highly welcome and proactively embrace the change . . . [and] believe the policy will benefit the industry in the

---

[2]  Plaintiffs' cases (Opp. at 9) are inapposite. *See Christine Asia Co. v. Ma*, 718 F. App'x 20, 22 (2d Cir. 2017) (company concealed meeting "two months prior to the IPO"); *In re Wells Fargo & Co. Sec. Litig.*, 2021 WL 4482102, at *16 (S.D.N.Y. Sept. 30, 2021) (regulatory developments had occurred "*at the time* [the] statement was made" (emphasis added)); *Goldman v. Belden*, 754 F.2d 1059, 1068-69 (2d Cir. 1985) ("defendants made . . . positive predictions . . . *while they knew*" of issues (emphasis added)); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 191 (S.D.N.Y. 2010)) ("[L]oans were *internally known* to be of poor quality, inadequately reviewed, improperly described and highly risky . . . at the time they were purchased." (emphasis added)).

3

long run.").)  Plaintiffs cannot manufacture a securities claim by mischaracterizing statements on another topic as relating to a regulation that did not yet exist.  Plaintiffs also claim that forward-looking March 5, 2021 statements that Gaotu "will continue to expand [its] recruiting" and "hope[s] for 2021, the full-year growth rate is going to be in the range of 70% to 80%" (*id.* ¶ 143) are "actionable because Defendants knew that the Chinese government was poised to promulgate the DRR."  (Opp. at 12 n.1.)  This fails for the same reason—Defendants could not have known what Plaintiffs claim, both because the Regulations had not been adopted and because the calls to "study and solve" the issues that led to their adoption had not even been made.[3]  (AC ¶ 66.)

The April 26, 2021 statements also do not support falsity.  Plaintiffs concede Gaotu warned of "***uncertainties . . . in relation to new legislation***" and "***proposed changes in the PRC regulatory requirements***."  (Opp. at 12; AC ¶ 146.)  It also warned such uncertainties could call into question the "***legality of our business operation***" and that "***[t]here is no assurance that we can comply with any promulgated laws and regulations in a timely manner or at all***," thereby warning of the potentially existential risk future regulations may pose to its business.  (Ex. B at 9.)  These disclosures "warrant dismissal . . . because investors were . . . warn[ed] of the specific contingency that lies at the heart of the alleged misrepresentation."  *Banerjee*, 2023 WL 2711279, at *12.[4]  Plaintiffs' attempts to find fault with these disclosures fail for the same reasons above (*see* Opp. at 12-15)—*i.e.*, they ignore the undisputed fact that the Regulations ***had not yet been adopted***, and

---

[3]  The quoted statements (*see* Opp. at 11-12 n.1; AC ¶¶ 143-44) are clearly opinions or forward-looking.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) ("An opinion is 'a ***belief***[,] ***a view***,' or a 'sentiment which the mind forms of persons or things.'" (alteration in original) (citation omitted)); *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 375 (S.D.N.Y. 2018) ("projections of . . . 'financial items' and 'statement[s] of future economic performance' fall[] with the ***statutory definition*** of 'forward-looking statement.'" (alteration in original) (emphasis added)).

[4]  Plaintiffs' attempt to distinguish *Banerjee* ignores that the statements in *Banerjee* were made on June 8, 2021, ***after*** the Double Reduction Regulations had been adopted on May 21, 2021.  2023 WL 2711279, at *2-3.  Plaintiffs' attempt to distinguish *Dagan Invs., LLC v. First High-Sch. Educ. Grp. Co.*, 2023 WL 8452223, at *4 (S.D.N.Y. Dec. 6, 2023) (*see* Opp. at 11), fails, because there, as here, the company discussed "favorable government policies" while also warning of the highly uncertain regulatory environment.

4

Defendants could not have, and had no duty to, disclose them. *Cf. Kwalbrun*, 201 F.3d 431. None of Plaintiffs' cases applies, as each concerns omissions of "**known** risks" or events that "**have already occurred**." (Opp. at 12-15.) This is not an "issue of materiality," but of whether the fact existed and was known (it was not). (*Id.* at 14.) Plaintiffs cannot state a claim—under Section 10(b), Item 303, or Item 105—based on pure omissions, which the Supreme Court recently held are inactionable, by merely recasting omission claims as half-truth claims. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 2024 WL 1588706, at *2 (U.S. Apr. 12, 2024) ("Pure omissions are not actionable under [SEC] Rule 10b-5(b)."); *see also Dagan*, 2023 WL 8452223, at *4 (rejecting Items 303 and 105 claims based on alleged omission of Double Reduction Regulations because at the time of the March 11, 2021 IPO, "[t]he Chinese government had not yet taken any action, so there were no 'trends' or 'risks' to disclose.").

Plaintiffs' remaining claims of falsity also fail because the Complaint does not allege particularized facts to show that Defendants knew the "specific contents" of the Double Reduction Regulations prior to their official release. (AC ¶ 165; *see id.* ¶ 169.) Plaintiffs cannot point to a single allegation of when or how Gaotu received prior knowledge of the "specific contents" of the Regulations. Plaintiffs allege that "Defendants [had] early access to **near-final** drafts of the measures." (Opp. at 13.) To state the obvious, a "near-final draft" is not a final regulation. Nor do these allegations—all of which were publicly reported—show that purported "drafts" contained the same contents as the final Regulations. (*See* AC ¶¶ 82-89, 92-93, 98-101, 105.) At most, they "merely show 'an indication' . . . 'toward heightened regulation, but left unclear the timing and form of such regulations.'" *Banerjee*, 2023 WL 2711279, at *10 (citation omitted).

Plaintiffs also point to the May 7, 2021 meeting between Beijing's Party Secretary Cai Qi and several after-school tutoring institutions, including Gaotu, **two weeks before** the adoption of

5

the Double Reduction Regulations. (AC ¶ 90.) The Opposition's claim that "Qi possessed the DRR at this meeting and shared it with Gaotu . . . at this time" is sheer speculation.[5] (Opp. at 6.) In fact, the meeting minutes Plaintiffs cite suggest the opposite. (*Id*. at 19 n.3.) Plaintiffs allege "Qi told Gaotu" and other private tutoring companies to "strengthen the management of fees and prepayments" (*id.*)—a directive that makes no sense in light of the Double Reduction Regulations' later requirement that these companies register as non-profits, whose fees would be subject to "government-guided price management." (AC ¶¶ 68-69.) They also allege that the Party Secretary told the institutions to "standardize marketing behaviors such as educational advertising" (Opp. at 19 n.3), which would have been unnecessary if the decision had already been made to ban all advertisements for after-school tutoring (AC ¶ 69). As shown in the Opening Brief, the other topics of discussion merely reinforced policy objectives covered by previously issued regulations and gave no indication of the comprehensive ban on private after-school tutoring.[6] (*See* Br. at 8.)

Finally, Plaintiffs argue that Defendants' prior knowledge is supported by allegations that Gaotu conducted widespread layoffs and "shut down . . . live streaming business operations" in May 2021, as reported by an online source called 36Kr. (Opp. at 16-17; AC ¶ 114.) But the Complaint pleads no facts "to support the probability" that this online publication or its unidentified sources "would possess the information alleged." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). Without explanation, Plaintiffs assert the allegations are corroborated by unspecified FE allegations. (Opp. at 17.) But Plaintiffs fail to address (and thus concede) that

---

[5] The Complaint merely alleges that "any order from Xi is passed down to old and trusted close aides through Cai [Qi]." (AC ¶ 91.) This vague allegation adds nothing because the "order" in question was not even given until ***two weeks later*** when President Xi "reviewed and passed" the Regulation on May 21, 2021. (*Id*. ¶¶ 91-93.)

[6] Plaintiffs also refer to a meeting of the Beijing Municipal Education Commission (which was publicly reported), (Opp. at 13), but do not even allege Gaotu attended this meeting (AC ¶¶ 94-96). *In re Didi Global Inc. Sec. Litig.*, 2024 WL 1119483, at *6 (S.D.N.Y. Mar. 14, 2024) is inapposite, as there, plaintiffs pled that regulators had told Didi to delay its IPO—the precise fact that was alleged to be omitted. Here, Plaintiffs fail to allege that the May 7, 2021 meeting disclosed the specific contents of Regulation they allege were omitted.

6

FE1's allegations actually *contradict* 36Kr's account of layoffs and ceased social media traffic, and undermine an inference of Defendants' prior knowledge of the Regulations. (*See* Br. at 15-16); *Ross*, 2019 WL 4738941, at *7. None of the post-class period statements corroborate 36Kr's allegations.[7] Plaintiffs also fail to address Defendants' arguments that any alleged business changes cannot support prior knowledge, as Plaintiffs' own allegations demonstrate that the industry generally was taking similar actions to hedge risks in the face of widespread speculation and public calls for reform of the after-school tutoring industry. (*See* Br. at 16-17 & nn.4-5.)

Because Plaintiffs fail to show Defendants' prior knowledge of the Double Reduction Regulations' contents prior to July 24, 2021, they fail to plead that the May 26, 2021 and July 23, 2021 statements—that Gaotu had not received the specific or official contents of the Regulation—were false. (AC ¶¶ 164-65, 168-69.) Nor can they show Defendants' optimistic statements on May 26, 2021 (Opp. at 15) were not honestly held when made. *See Omnicare,* 575 U.S. at 189.[8]

## II.   PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiffs' allegations of insider sales fail to establish motive. They fail to plead Individual Defendants sold *any* shares during the Class Period, including through Irefresh, which "[held] shares for Gaotu's employees." (AC ¶ 107; *see* Opp. at 22-23.) Hence, the claim that Defendants "gained financially from the alleged fraud" is a non-sequitur.[9] (Opp. at 21.)

---

[7]  Disclosures of layoffs and closures in August 2021 and ceasing online traffic acquisition "*since* the second quarter" (*i.e.*, after June 2021) do not corroborate 36Kr's claims that these events occurred in May 2021. (AC ¶¶ 114, 136; *see* Br. at 16 n.4.) Far from corroborating 36Kr, statements that Gaotu "will cease offering [K-9] tutoring . . . by the end of 2021" and Grade 10-12 tutoring "before the end of February 2022" (AC ¶¶ 140-41) show that Gaotu lacked prior knowledge and needed *five to seven months* to adjust its business to comply with the Regulations.

[8]  The Complaint shows optimism was reasonable at the time, as Gaotu's business historically "thrived" even as thousands of other tutoring companies were forced to shut down in prior regulatory crackdowns. (AC ¶¶ 35, 63.)

[9]  Plaintiffs appear to rely on their baseless assertion that Defendant Shen and other executives "controlled" Irefresh. (Opp. at 23.) But Defendant Shen only sits on Irefresh's advisory committee, which is not even alleged to have the power to direct the retention or disposal of Irefresh's shares. (AC ¶ 109.) The advisory committee only has authority to direct the trustee to "exercise the *voting rights* attached to the shares." (Ex. B at 93.)

7

Regardless, Plaintiffs fail to allege the sales were "unusual." *In re Piedmont Lithium Inc. Sec. Litig.*, 2024 WL 197751, at *4 (E.D.N.Y. Jan. 18, 2024). As shown in the Opening Brief (Br. at 20-21), the fact that the sales were made on the ***same day*** that Gaotu disclosed ***negative*** information regarding increased regulation and ***after*** the public became aware of Beijing's calls for heightened regulation (AC ¶¶ 108-09) undermines any inference that Defendants were motivated by a "desire to take advantage of any market deception about [regulatory] issues." *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 384 (E.D.N.Y. 2003). That the sales allegedly occurred ***more than four months before*** the Regulations were released further undermines scienter. *See Sun v. TAL Educ. Grp.*, 2023 WL 6394413, at *30 (S.D.N.Y. Sept. 29, 2023).

Citing no support, the Opposition claims that these same facts somehow support scienter, because while the public knew of "the potential for tighter regulations . . . Defendants knew more about the contents of the DRR . . . than any ordinary investors." (Opp. at 22.) That claim is plainly conclusory and is belied by the allegation that three other "unrelated" investment firms made similar trades during the same period. (*Id.*; *see* AC ¶ 97.) Plaintiffs' claim that the trades of these "unrelated" investment firms were based on nonpublic information is likewise rank speculation. (Opp. at 22; AC ¶ 97.) In any event, "unrelated" investment firms' trading behavior has no bearing on ***Defendants'*** scienter.

It is also implausible that anyone—including Defendants—could possibly have known the contents of the Regulation on the date of these trades on March 9, 2021, just ***three days after*** President Xi's March 6, 2021 speech. That day, President Xi called on the government to "make joint efforts to study and solve" the "persistent and hard-to-remedy" issues facing the industry. (AC ¶ 66.) In other words, he directed Chinese officials to ***begin the process*** of finding a regulatory solution, which ***later*** resulted in the Double Reduction Regulations. Plaintiffs

8

acknowledge that this drafting process included a "comprehensive data analysis 'covering 10 provinces, 100 districts and counties, 18,600 tutoring institutions, 680,000 students, and 740,000 parents.'" (*Id.* ¶ 82). It defies reason to believe that this arduous process could have been completed in three days, let alone that the draft was distributed to Defendants prior to these trades. Because Plaintiffs fail to show Defendants knew anything more than the public, *i.e.*, that there was "potential for tighter regulation," the *Financial Times* article does not support Plaintiffs' claim that the Irefresh trades were motivated by inside information. (*See id* ¶ 138; Opp. at 22.)

The Opposition's recklessness arguments fare no better. Nowhere does the Opening Brief argue Plaintiffs' claims must be "alleged in chapter and verse." (Opp. at 19.) Defendants merely cite the law of this Circuit that "[w]here plaintiffs contend defendants had access to contrary facts, they must ***specifically identify the reports or statements*** containing this information," *Novak*, 216 F.3d 309 (emphasis added), which Plaintiffs fail to do.[10] Plaintiffs again point to the May 7, 2021 meeting with Cai Qi (Opp. at 19), but as shown above, the public minutes Plaintiffs quote confirm that the content of the Regulations was not discussed at that meeting. (*See supra I.*; Opp. at 19 n.3.) Vague references to regulatory communications, "near-final drafts," and meetings that Gaotu is not even alleged to have attended (AC ¶¶ 82-84, 92-96) are insufficient to plead scienter, and were all contemporaneously reported in the media. *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011) ("[P]laintiffs cannot rely on information generally known or available to the public to support to support circumstantial scienter allegations."). Moreover, where, as here,

---

[10] Plaintiffs' cases are inapposite as plaintiffs in those cases pleaded the specific facts missing here. *See, e.g., New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F.App'x 10, 13-14 (2d Cir. 2011) (defendants reviewed spreadsheets "detailing the extent and excess" issues); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 351 (S.D.N.Y. 2015) ("common knowledge within the group about the fraud"); *cf. Reese v. Malone*, 747 F.3d 557, 577 (9th Cir. 2014) (no scienter where, as here, plaintiffs "d[id] not allege facts showing that [the CEO] knew about the problems when he made the statement," even if problems were the "focus of both public and government inquiries"), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).

Plaintiffs rely on a theory of fraud-by-hindsight, generalized allegations based on Defendants' "executive" positions or that Defendants "held themselves out as knowledgeable about Chinese regulations" (Opp. at 20), are "insufficient, as a matter of law, to establish scienter." *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006). "Because Plaintiffs have failed to allege facts that are independently sufficient to plead scienter, [their] core operations argument cannot save these claims." *Sun*, 2023 WL 6394413, at *33.

Plaintiffs fail to raise a strong inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). Plaintiffs' assertion that their allegations are "indicative of action much more serious than a 'hedge' against adverse business conditions" ignore that those alleged actions were consistent with those of the market generally, both within and outside the industry.

### III.  PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

As Plaintiffs' cases show, "when [their] loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that [their] loss was caused by the fraud is lessened." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 404 n.2 (2d Cir. 2015) (citation omitted); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 187 (2d Cir. 2015). Plaintiffs concede Gaotu's ADS price "fell because the market became aware that the contents of the DRR and the ruinous impact [it] would have on Gaotu (and indeed, on *every* Chinese private tutoring company)" not because of any alleged misrepresentation. (Opp. at 25).[11]

### CONCLUSION

As shown above and in the Opening Brief, the AC should be dismissed with prejudice.

---

[11]  As Plaintiffs fail to plead their Section 10(b) claim, their Section 20(a) claim necessarily fails. (*See* Br. at 25 n.6.)

Dated: New York, New York
       June 20, 2024

                                                Respectfully submitted,

/s/ Robert A. Fumerton
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
Judith A. Flumenbaum
One Manhattan West
New York, New York 10001
Phone:   (212) 735-3000
Fax:     (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com
judy.flumenbaum@skadden.com

*Counsel for Defendants Gaotu Techedu*
 *Inc., Xiangdong Chen, and Nan Shen*

11