EXECUTION VERSION

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TCP DIVERSIFIED TECHNOLOGY FUND, Individually and on behalf of all other similarly situated,<br><br>           Plaintiff,<br><br>   v.<br><br>GAOTU TECHEDU INC. F/K/A GSX TECHEDU INC., XIANGDONG CHEN, and NAN SHEN,<br><br>           Defendants. | Case No. 22-cv-7966-PKC-CLP<br><br>**STIPULATION AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Lead Plaintiff TCP Diversified Technology Fund and Named Plaintiff Jun Ye (collectively, "Plaintiffs") and Defendants Gaotu Techedu Inc. ("Gaotu"), Xiangdong Chen, and Nan Shen (collectively, "Defendants" and together with Plaintiffs, the "Parties") respectfully submit this Stipulation and [Proposed] Order Re: Discovery of Electronically Stored Information governing the collection and disclosure of electronically stored information during the course of the litigation.

1.    <u>PURPOSE</u>

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. Nothing herein is intended to expand the scope of discovery beyond the defaults contained in the Federal Rules of Civil Procedure or to require parties to produce irrelevant information in order to comply with this Order. The purpose of this Order is to streamline production to promote efficient electronic discovery in this action. The Parties agree to alert all other Parties concerning any technical problems associated with complying with this Protocol. To the extent a Party

1

reasonably believes that compliance with this Protocol imposes an undue burden with respect to any protocol, source, or search term listed herein, it shall notify the other Parties, and the Parties shall promptly confer in an effort to resolve the issue.

2.      DEFINITIONS

2.1.      "Custodian" means the person who maintains a document in the ordinary course and from whom a document was collected for use in this action.

2.2.      "Document" or "Documents" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

2.3.      "Electronically stored information" or "ESI" means any Document or Documents stored or transmitted in electronic form.

2.4.      "Hard-Copy Document" means any Document existing in paper form at the time of collection.

2.5.      "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

2.6.      "Metadata" means data created as a function of the application software used to create the document or file. To the extent they are available and able to be captured at the time of collection, the metadata values that are to be extracted and produced in the metadata load files

(.DAT file using concordance standard delimiters) are listed in "Addendum A" attached hereto. The Parties reserve the right to request additional metadata values depending on the source of the data, if the source is not otherwise covered by this Order (*e.g.*, non-traditional sources of ESI).

2.7.    "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is an .xls or .xslx file.

2.8.    "Load Files" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

2.9.    "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

2.10.    "Searchable Text" means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

3.    <u>COOPERATION</u>

<u>THE PARTIES ARE AWARE OF THE IMPORTANCE THE COURT PLACES ON COOPERATION AND COMMIT TO COOPERATE IN GOOD FAITH THROUGHOUT THE MATTER CONSISTENT WITH GENERALLY ACCEPTED PRACTICES CONCERNING THE DISCOVERY OF ESI.</u>4.    <u>SEARCH</u>

4.1    Consistent with Principle 6 of The Sedona Conference Principles, the Parties agree that producing parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

4.2    The Parties agree to meet and confer over the use of search terms, date ranges, custodians and other parameters or methods to be used to cull data for review and production

EXECUTION VERSION

and to exchange proposed search terms, including whether the use of certain hit reports and/or sampling would be reasonable and appropriate.

4.3    The Parties agree to continue to meet and confer in an effort to conduct discovery in the most efficient and effective manner.  The Parties agree to not seek court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

5.    <u>PRODUCTION FORMATS</u>

5.1    Aside from ESI described in paragraph 6.2, ESI is to be produced in 300 DPI Group IV Grayscale Tagged Image File Format (.TIFF or .TIF) files. TIFF files shall be produced in single-page format along with image load files (.OPT file and .LFP file). All documents are to be provided with per document searchable text (.TXT) files, and such text files shall contain the full text extraction. Each TIFF image must convey all the information the document contains, disclosing all track changes, hidden content, notes, and any hidden slides, rows or columns, subject to any redactions. In the event a document does not contain electronically extractable searchable text or is redacted or scanned into TIFF format, the text file should contain that document's OCR text. These image load files should indicate page breaks, to the extent possible. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

5.2    Spreadsheet files, database files or reports, and media files shall be produced in Native Format accompanied by a Bates-stamped placeholder TIFF bearing the legend "This Document has been produced in Native Format."

5.3    During the process of converting ESI from the electronic format of the application

in which the ESI is normally created, viewed and/or modified to TIFF, metadata values listed in Addendum A should be extracted and produced in a load file.

5.4     Unless otherwise stated herein, documents in families shall be produced and Bates-stamped in sequence with the Absolute Parent first in sequence, followed by any and all attachments. Absolute Parent shall be defined as the document that is the source for all other documents in a document family, regardless of whether attachments to the Absolute Parent are also parent documents with attachments. When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

5.5     The Parties may deduplicate document families found to be MD5 Hash duplicates across or within Custodians. Moreover, (a) de-duplication shall be performed only at the document family level so that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa, although each family member shall be hashed separately for purposes of populating the MD5 Hash field; (b) attachments to emails, instant messages, or other documents shall not be disassociated from the parent email, instant Messages, or document even if they are exact duplicates of another Document in the production. A party electing to deduplicate exact duplicates across Custodians shall take reasonable steps to ensure that at least one copy of a responsive exact duplicate that is located in the files of one or more Custodians agreed to by the Parties (or ordered by the Court) is produced.

5.6     Upon review of a Party's production, a Receiving Party may request the production of ESI in native format where the production in native format is reasonably necessary to the ESI's comprehension or use. For ESI produced in Native Format, a Bates-stamped placeholder TIFF bearing the legend "This Document has been produced in Native Format" shall also be produced in the same manner as other TIFFs, if TIFFs were not previously included.

6.      CROSS BORDER DISCOVERY & DATA PRIVACY

6.1      The Parties will meet and confer regarding any issues in cross-border discovery, including limitations on the collection, review, and production of any Document imposed by the applicable laws of the People's Republic of China, including, but not limited to, the Personal Information Protection Law, the Cybersecurity Law, the Data Security Law, and the State Secrets Law.

7.      DOCUMENTS PROTECTED FROM DISCOVERY

7.1      Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case is not itself a waiver in this case or in any other federal or state proceeding. For the avoidance of doubt, the parties will not conduct an inquiry under Fed. R. Evidence 502(b) to determine whether information was produced inadvertently. Instead, the parties will determine inadvertence solely based on the good faith representation of the producing party. When a producing party gives notice to receiving parties that certain produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set forth in Fed. R. Civ. P. 26(b)(5)(B).

8.      MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

[*Signature blocks on following page*]

EXECUTION VERSION

Dated: May 2, 2025     LEVI & KORSINSKY, LLP

         By: *s/ Adam M. Apton*
         Adam M. Apton
         33 Whitehall St, 17th Floor
         New York, NY 10004
         Tel.: (212) 363-7500
         Fax: (212) 363-7171
         aapton@zlk.com

         *Attorneys for Lead Plaintiff*
         *and Lead Counsel for the Class*

          -and-

         THE ROSEN LAW FIRM, P.A.
         Phillip Kim
         Yu Shi
         Jing Chen
         275 Madison Avenue, 40th Floor
         New York, New York 10016
         Tel.: (212) 686-1060
         Fax: (212) 202-3827
         pkim@rosenlegal.com
         yshi@rosenlegal.com
         jchen@rosenlegal.com

         *Additional Counsel for Plaintiffs*
         *and the Class*

Dated: May 2, 2025     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

         By: *s/ Robert A. Fumerton*
         Scott D. Musoff
         Robert A. Fumerton
         Michael C. Griffin
         Judith A. Flumenbaum
         One Manhattan West
         New York, NY 10001
         Tel.: (212) 735-3000
         Fax: (212) 735-2000
         scott.musoff@skadden.com
         robert.fumerton@skadden.com
         michael.griffin@skadden.com
         judy.flumenbaum@skadden.com

         *Attorneys for Defendants*

EXECUTION VERSION

PURSUANT TO STIPULATION, IT IS SO ORDERED.


DATED: _____    _____
HON. CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE

**ADDENDUM A**

| Field | Definition | Doc Type |
|---|---|---|
| CUSTODIAN | Name of person from where Documents/files were collected or, in the case of non-human sources, a short description of that source (*e.g.*, "Shared Drive"). | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | Ending Bates Number (production number) | All |
| BEGATTACH | First Bates number of family range (*i.e.*, Bates number of the first page of the parent Document) | All |
| ENDATTACH | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment or, if no attachments, the Document itself) | All |
| PAGE COUNT | Number of pages in the Document | All |
| APPLICATION | Commonly associated application for the specified file type. | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| DATESENT | Date Sent (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| DATERCVD | Date Received (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| OUTLOOK TYPE | Type of Outlook item, *e.g.*, e-mail, calendar item, contact, note, task | Outlook or similar system data |
| HASHVALUE | Hash value (*e.g.*, MD5 or SHA-1) | All |
| FILENAME | Original file name at the point of collection | E-Document |
| TITLE | Internal Document property | E-Document |

8

EXECUTION VERSION

| AUTHOR | Creator of a Document | E-Document |
|---|---|---|
| DATE CREATED | Creation Date (mm/dd/yyyy hh:mm:ss AM) | E-Document |
| DOCUMENT TYPE | Descriptor for the type of Document: e.g. "E-Document" for electronic Documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Hard Copy" for Hard-Copy Documents. | All |
| PRODVOL | Name of media that data was produced on. | All |
| TIMEZONE | Time zone of data used during processing of data. | All |