SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-3902
DIRECT FAX
(917) 777-3902
EMAIL ADDRESS
ROBERT.FUMERTON@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

September 8, 2025

**BY ECF**

Honorable Cheryl L. Pollak
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> RE:   *TCP Diversified Technology Fund v. Gaotu Techedu Inc. et al.*,
> 22-cv-07966 (PKC) (CLP) – Defendants' Letter Motion to Compel
> <u>Discovery Regarding Confidential Witnesses in Amended Complaint</u>

Dear Judge Pollak:

On behalf of Defendants, we respectfully write pursuant to the Court's Order dated August 7, 2025, and the Court's Individual Rule V.B. to request that the Court order Plaintiffs to disclose the identities and last known contact information of the confidential former employees ("FEs") cited in the Amended Complaint ("AC"), and the name of the investigative firm that allegedly interviewed them. As demonstrated below, this information is plainly relevant and Plaintiffs have no legitimate basis to withhold or restrict it.

## I.   <u>Factual Background</u>

In the AC, Plaintiffs directly cite allegations attributed to three FEs for the central theory of their case—that Defendants purportedly knew about the Double Reduction Regulation ("DRR") prior to its official release. Specifically, Plaintiffs rely on: (i) FE 1 for the allegation that certain centers were "immediately dissolve[d]" on the day after the DRR's official release (AC at ¶ 120), purportedly "corroborat[ing] . . . that Gaotu had been planning a substantial downsizing of its operations" prior to the DRR's official release (*id.* at ¶ 135); (ii) FE 2 for the allegation that the DRR was "widely known before July 24, 2021," including by "senior management," and that there was a "massive layoff in May 2021 [] in response to the [DRR]," (*id.* at ¶ 121); and (iii) FE 3 for the allegation that the "official document of the [DRR]" was "spread out . . . since mid-July 2021." (*Id.* at ¶ 122.) Judge Chen also relied on these very FE allegations to sustain Plaintiffs' scienter

allegations.  (*See* ECF No. 49 at 23-24 ("Plaintiffs offer several anonymized statements by former Gaotu employees that speak to Defendants' scienter . . . these first hand accounts, although anonymous for now, are consistent with the news reports upon which Plaintiffs also rely.").)

Defendants' interrogatories requested Plaintiffs to "[i]dentify each Former Employee in the Complaint, including their full name, the title used in the Complaint to mask the identity of that Person, and their present or last known contact information." (Ex. A, Defs.' Interrogatories Against TCP Diversified Technology Fund ("TCP") at 6; Ex. B, Defs.' Interrogatories Against Jun Ye at 6.)  To identify any investigative firm used for uncovering and communicating with FEs, among other things, Defendants also requested Plaintiffs produce "[a]ll Documents and Communications Concerning any agreement that relates to this Action." (Ex. C, Defs.' RFPs from TCP at 12; Ex. D, Defs.' RFPs from Jun Ye at 11.)  Plaintiffs objected to both of Defendants' requests, in part, because production was purportedly protected by the work product doctrine. (Ex. E, TCP's R&Os to Defs.' Interrogatories at 5; Ex. F, Jun Ye's R&Os to Defs.' Interrogatories at 5; Ex. G, TCP's R&Os to Defs.' RFPs, at 20-21, Ex. H, Jun Ye's R&Os to Defs.' RFPs at 19.)

When the parties conferred about these responses on July 24, Plaintiffs stated they did not possess the FEs' names nor contact information, and that only their PRC-based investigative firm had ever communicated with the FEs.  On July 31, Plaintiffs updated Defendants that they had "spoken with [their] investigator concerning the CWs and [were] preparing a response."  (Ex. I, July 31, 2025 A. Apton Email.)  On August 22, after Defendants followed up, Plaintiffs stated they expected to produce the FEs' names by August 29, but would not provide any contact information because the Company allegedly possessed such information.  Defendants reiterated any agreement with Plaintiffs' investigative firm should also be produced, to which Plaintiffs responded they would also provide an update by August 29.

On September 3, Plaintiffs stated for the first time they would only provide the name of one FE (FE 2) and could only do so upon "confirmation from [D]efendants first that [FE 2's name] will be given 'Attorneys' Eyes Only' status (more specifically, Skadden US AEO with no disclosure to anyone outside of your immediate US-based team)."[1]  (*Id.*, Sept. 3, 2025 A. Apton Email.)  This would bar Defendants' U.S.-based counsel from sharing FE 2's name with their Asia teams working on the matter and, critically, ***Defendants themselves***.  Plaintiffs explained this stemmed from "fear that [Plaintiffs' investigator] and the CWs may face repercussions from PRC authorities and the company." (*Id.*, Sept. 5, 2025 A. Apton Email.)[2]  Plaintiffs also stated they were "not authorized to provide the name of [their] investigator firm," and would only produce any agreement, if one existed, "in redacted form." (*Id.*, Sept. 3, 2025 A. Apton Email.)  To date, Defendants have not received any FEs' identity or contact information, nor the name of Plaintiffs' PRC-based investigative firm.

---

[1]  Plaintiffs also stated they would provide "an update on the status of FE1 and FE3." (Ex. I, Sept. 3, 2025 A. Apton Email.)  To date, Plaintiffs have not provided any further information on FE 1 and FE 3.

[2]  Prior to September 5, 2025, Plaintiffs had only objected to disclosing the FEs' identities and contact information on the basis of relevance and work product privilege, and had not cited any fear of "repercussions."

## II.      The Requested Information Is Relevant and Discoverable

The FEs' identities and contact information and the name of Plaintiffs' PRC-based investigative firm is clearly relevant to Plaintiffs' allegations and within the scope of discovery. Rule 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Rule 26(b)(1) clearly requires that the names of [FEs] be produced" because where Plaintiffs "represent[] that the [FEs] have 'firsthand knowledge' of specific facts tending to establish [Defendants'] liability for securities fraud, [] interviews or depositions are reasonably likely [] to constitute or reveal admissible, if not highly probative, evidence." *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 339 (S.D.N.Y. 2011).[3] "Identifying the [FEs] would also help the defense to more accurately assess the strength of the [AC's] claims" by "shed[ding] light on whether the [FE] in fact had a firsthand basis for his or her allegations, or had been misquoted." *Id*. at 339 n.2.[4]

Without being able to probe Plaintiffs' allegations relating to the FEs, Defendants and the Court cannot "assess the strength of the [AC's] claims" and "whether there were reasons to credit [or] discredit" allegations attributed to the FEs. *Arbitron*, 278 F.R.D. at 339, 339 n.2. (citing *Campo v. Sears Holdings Corp.,* 371 Fed. Appx. 212, 216 (2d Cir. 2010) (summary order)); *see also In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 2012 WL 259326, at *3 (S.D.N.Y. Jan. 27, 2012) ("While the Court acknowledged that use of [CWs] to support a complaint was entirely proper, 'once the discovery phrase begins, the balance of interests shifts [and] [t]he priority becomes reciprocal and robust fact-gathering as the parties seek to discover relevant evidence.'"). Critically, Plaintiffs directly rely on allegations attributed to the FEs for the central theory of their case (AC ¶ 120-122, 135), and Judge Chen specifically relied on them to sustain Plaintiffs' scienter allegations. (ECF No. 49 at 23-24.)

The name of the investigative firm that allegedly communicated with the FEs is also relevant and discoverable because Defendants must be able to assess the strength of the allegationa attributed to the FEs.[5] *See In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at *12 (S.D.N.Y. May 29, 2015) ("[T]he investigator may have mistaken hearsay, opinion, or conjecture for facts, or the investigator's interview memo may not have carefully distinguished between them."). Without it, Defendants cannot independently assess the purported investigation into the

---

[3]   Plaintiffs also failed to disclose any FEs in their Initial Disclosures as individuals that "likely to have discoverable information that Plaintiffs may use to support their claims." (Ex. J, Plaintiffs' Initial Disclosures). *See* Fed. R. Civ. P. 26(a)(1) ("A party must, without awaiting a discovery request, provide . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses.").

[4]   *See also In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 2012 WL 1134142, at *3 (S.D.N.Y. Mar. 6, 2012) ("Plaintiffs should not be permitted to rely on the testimony of confidential witnesses to state their claims, and then withhold the identities of the confidential witnesses during discovery."); *In re Marsh & McLennan Cos. Sec. Litig.*, 2008 WL 2941215, at *3 (S.D.N.Y. July 30, 2008) ("Because Lead Plaintiffs relied upon the CWs in drafting the SAC, the CWs possess discoverable information.").

[5]   Plaintiffs also refuse to produce any notes and memoranda prepared by their investigative firm to Defendants on the basis that such production is also protected by the work product doctrine. Defendants reserve their rights to compel disclosure of such documents.

3

FEs and the statements they provided, including by seeking documents from the investigative firm. Moreover, without Plaintiffs disclosing the FEs' identities and contact information, Defendants' only remaining potential source of such information is the investigative firm which Plaintiffs engaged. Yet Plaintiffs also refuse to produce this information. Setting aside whether Plaintiffs' failure to personally speak with the FEs to confirm the quotes attributed to them complies with their Rule 11 obligations,[6] Plaintiffs' refusal to disclose the name of their PRC-based investigative firm further constrains Defendants from engaging in meaningful discovery by gathering additional relevant information regarding the FEs and the investigation itself. This further denies the Court and Defendants the opportunity to meaningful assess Plaintiffs' counsel's adequacy for purposes of class certification. *See* Fed. R. Civ. P. 23(g)(1) (directing courts to consider "the work counsel has done in identifying or investigating potential claims" when appointing class counsel).

### III.   Plaintiffs Have No Basis to Withhold or Restrict the Requested Information

First, Plaintiffs are now refusing to provide the FEs' personal information because their "***investigator*** expressed fear that he and the CWs may face repercussions from PRC authorities and the company." (Ex. I, Sept. 5, 2025 A. Apton Email (emphasis added).) Such "generic[]" and "[]conclusory" assertions of potential retaliation are not sufficient to withhold the FEs' identities. *Arbitron*, 278 F.R.D. at 344. This is particularly true where, as here, "there is no indication that any of these witnesses expressed concerns specific to themselves that led to the confidentiality designation [but] [r]ather, this designation appears to have been made on a global basis." *Id.*; *see also In re Marsh & McLennan*, 2008 WL 2941215, at *5 ("[C]onclusory statements regarding retaliation . . . will not suffice."). Plaintiffs' mere reliance on their investigator's personal fear is plainly insufficient. Plaintiffs cite no basis as to *why* they believe the Company would retaliate against its FEs, nor do they explain *how* the Company would do so against *former* employees. Likewise, Plaintiffs do not cite any specifics to support their investigator's fear that he and the FEs would face repercussions from PRC authorities. They fail to plead *which* PRC authorities would retaliate, *why* any PRC authorities would retaliate, *how* any PRC authorities would discover their identities, and *what* retaliation, if any, would occur.

Further, Plaintiffs' counsel's reference to "repercussions" was raised specifically as a reason for not disclosing the requested information for the first time ***months*** after Defendants requested the FEs' identities (and only four days before these letter motions were due) while seemingly dropping prior objections on work product and relevancy grounds. Moreover, just weeks ago, Plaintiffs stated that they ***would*** provide Defendants the requested information without any mention of potential retaliation concerns. There has been no explanation of why that is no longer the case. Plaintiffs' shifting narratives only underscore that the risk of any potential "repercussion" should not prevent disclosure of the FEs' identities.

---

[6]   *See In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013) ("When citing alleged confidential witnesses in a complaint, the certification means that counsel has spoken with these confidential witnesses and knows who they are."); *In re Millennial Media*, 2015 WL 3443918, at *11 ("The practice . . . in which plaintiffs' counsel makes literally no attempt to confirm the quotes of a witness on whom counsel proposes to rely in a public filing, sits at best uneasily alongside Federal Rule of Civil Procedure 11.").

Second, the case law is clear that the names and contact information of confidential witnesses are not entitled to work product protection.[7] *In re Am. Int'l Grp.*, 2012 WL 1134142, at *3 ("The work product doctrine cannot be employed to protect the identities of [Plaintiffs'] confidential witnesses." (quoting *In re Bear Stearns*, 2012 WL 259326, at *3)). This is true "even [for confidential witnesses] whom [] Plaintiffs do not intend to call at trial." *In re Marsh & McLennan*, 2008 WL 2941215, at *3.

Third, Plaintiffs' offer to produce FE 2's name only if Defendants agree to deem it Attorneys' Eyes Only and restrict its disclosure to U.S.-based outside counsel is impractical and inconsistent with the Parties' Protective Order.[8] (ECF No. 60.) The Protective Order only permits parties to designate information as Attorneys' Eyes Only if it contains trade secrets and personal information about minors. (*Id.* at 2.) The FEs' identities and contact information are neither. Even so, the Protective Order does not restrict access to Attorney Eyes' Only information to only U.S.-based outside counsel—instead, it expressly permits disclosure to Defendants' outside counsel and in-house counsel. (*See id.* at 10.).

Barring Defendants themselves from knowing the identity of FE 2 is similarly untenable. Plaintiffs' refusal to provide contact information for FE 2 prevents Defendants' U.S.-based counsel from gathering FE 2's information from the Company (to the extent it possesses such information) as suggested by Plaintiffs. Regardless, Plaintiffs' proposed restriction is unworkable even if they provide the FEs' contact information—it would still result in Defendants themselves being kept in the dark about the witnesses deposed or those producing documents in this case. Such a result is nonsensical. Plaintiffs' offer to disclose the name of a single FE only to U.S.-based outside counsel, while refusing to produce any contact information, only reveals their intention to prevent Defendants from any opportunity to probe the purported knowledge of these FEs.

*****

Defendants respectfully request that the Court order Plaintiffs to provide to Defendants forthwith the identities and last known contact information of the FEs they rely on in their AC and the name of investigative firm that allegedly interviewed them.

Respectfully submitted,

*/s/ Robert A. Fumerton*

Robert A. Fumerton

cc: All Counsel of Record (via ECF)

---

[7] Nor is the name of the investigative firm engaged by Plaintiffs' counsel, a matter of fact within a document, protected from discovery by the work product doctrine. *See Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 230 (E.D.N.Y. 2007) ("Work product protection typically applies only to 'documents and tangible things,' and not to facts within the documents."). Thus, Plaintiffs should also be prevented from producing a redacted agreement with any investigative firm.

[8] To the extent Plaintiffs attempt to restrict disclosure of FE 1 and FE 3's identities, such restriction is similarly improper.