# Levi & Korsinsky

33 Whitehall St., 27th Floor
New York, NY 10004
T: 212-363-7500
F: 212-363-7171
www.zlk.com

Adam Apton
aapton@zlk.com

September 15, 2025

**VIA CM/ECF**

Hon. Cheryl L. Pollak
U.S. District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, N.Y. 11201

> Re: ***Zhang v. Gaotu Techedu Inc. f/k/a GSX Techedu Inc. et al.***
> **Case No.: 22-cv-7966**

Dear Judge Pollak:

Our office represents the Plaintiffs in the above-referenced securities class action litigation. We refer to Defendants' letter dated September 8, 2025 requesting the names and contact information for Plaintiffs' confidential witnesses and investigative firm. Dkt. No. 63. As explained below, Defendants have refused to accept a reasonable proposal from Plaintiffs seemingly in hopes of scoring some sort of tactical advantage in the litigation. Respectfully, their strategy should not be condoned and their request should be denied.

## I.      Plaintiffs' Confidential Witnesses

Plaintiffs retained an investigative firm in China ("PRC Investigator") at the outset of this case to locate and contact former employees of Gaotu who could provide relevant information in support of Plaintiffs' theory of liability, *i.e.*, that Defendants knew about the Double Reduction Regulation and the impact it would have on the company but concealed it from investors. PRC Investigator interviewed former employees (identified in the Complaint as FE 1, FE 2, and FE 3), took contemporaneous notes, and provided Plaintiffs with detailed written summaries of the interviews. Investigative measures such as these are commonplace in securities fraud litigations due to the PSLRA's heightened pleading standards and resulting need for particularized levels of information to support alleged claims.

Since 2023, the Chinese government has drastically expanded its crackdown on consultancy and due diligence firms that perform research or investigation into PRC subjects for foreign clients. While investigators continue to operate, they have increased precautionary measures out of concern for the safety and welfare of themselves and the individuals they interview. For example, PRC Investigator's summaries of the FE interviews do not disclose the names or contact information of the FEs. That practice was followed in this case for FE 1, FE 2, and FE 3.



Based on the written summaries of the interviews, Plaintiffs included information from FE 1, FE 2, and FE 3 in the Complaint and, as required, provided certain identifying information to demonstrate the reliability of the allegations they provided. This included their roles at Gaotu, their dates of employment, and the specific Gaotu locations at which they worked. *See* Complaint (Dkt. No. 31) at ¶¶119, 121, 122. Though Plaintiffs thought the information they received from the former employees was important at the time, Judge Pamela Chen ultimately relied predominantly on Plaintiffs' other allegations when deciding to (largely) deny Defendants' motion to dismiss. Out of more than 200 paragraphs in Plaintiffs' Complaint, only five referenced the former employees; Judge Chen's order denying the motion to dismiss similarly only mentioned the former employees in only two paragraphs throughout the entire 27-page order. In sum, the former employees ended up being relatively unimportant to the overall litigation and the Court's decision on the motion to dismiss and, candidly, remain relatively unimportant in the litigation now.

## II.    Defendants' Request for Discovery

Despite their relatively minor role in the litigation, Defendants have demanded that Plaintiffs provide each former employee's name and contact information along with the name of their PRC Investigator. Their reason for doing so is quite apparent. Defendants know that by requiring Plaintiffs to provide this information, each of the former employees as well as PRC Investigator could be exposed to repercussions in China. Thus, this so-called discovery dispute is being driven not by any genuine need for the information being requested, but instead out of a desire to ensnare Plaintiffs in an unnecessary discovery sideshow; indeed, Defendants themselves could easily enough obtain the identities of their own former employees based on the identifying information already provided in the Complaint. This explains why Defendants have rejected Plaintiffs' proposed compromises to date.

Nevertheless, when Plaintiffs first received Defendants' requests, Plaintiffs sought from PRC Investigator: (a) the names of the FEs so that Plaintiffs could provide them to Defendants; and (b) permission to disclose the PRC Investigator's name to Defendants.

PRC Investigator initially resisted both requests out of fear for the safety of PRC Investigator and the FEs. According to PRC Investigator, the Chinese government has been increasing its crackdown on firms in China that provide investigative services into PRC entities for the benefit of foreign clients, reflecting a broader effort to curtail foreign access to Chinese data and shield PRC entities from foreign scrutiny. For example, in 2023, the PRC government raided the Beijing offices of the investigation/due diligence firm Mintz Group, detaining all five staff members and shutting down its China operations.[1] Also in 2023, the PRC government raided the Shanghai office of Bain & Co., seizing computers and phones and questioning its staff.[2] PRC

---

[1] Exhibit A, Reuters, *China fines Mintz $1.5 mln for 'unapproved' work, after raiding its Beijing office*, dated Aug. 22, 2023.

[2] Exhibit B, Hong Kong Democracy Council, *U.S. Consulting Firms in China Face Raids and Arrests*, dated May 2023.

authorities also raided multiple China offices of the international advisory firm Capvision in 2023.[3] PRC Investigator stated that these three raids represent only the tip of the iceberg, garnering international publicity because of the high-profile nature of the firms involved. PRC Investigator further told Plaintiffs that in actuality, the China offices of many other firms providing investigative services to foreign clients have been raided by PRC authorities since 2023.

Despite the risks, Plaintiffs persisted in their efforts to obtain the information from PRC Investigator and, ultimately, had PRC Investigator agree to search their records and provide the identities of the FEs on the condition that Defendants' counsel agree not to share the information with anyone in China out of concern for the FEs' safety.

In late-August, PRC Investigator provided Plaintiffs with the name of FE 2 and gave Plaintiffs permission to disclose it to Defendants' counsel if Defendants' counsel agreed not to share the information with anyone in China. However, PRC Investigator informed Plaintiffs that it no longer had the records containing the identities of FE 1 and FE 3. Following the PRC government's raids of the various investigative firms in 2023, PRC Investigator erased electronic records in PRC Investigator's possession that contained personal information to protect PRC Investigator and its sources. The electronic records erased by PRC Investigator inadvertently contained records pertaining to the investigation conducted in this case. Notwithstanding, PRC Investigator was still able to provide FE 2's name after locating a physical notebook that had notes from the interview with FE 2. The notebook did not have FE 2's contact information, however.

Plaintiffs offered to provide Defendants with the name of FE 2 if Defendants agreed to treat it as Attorneys' Eyes Only limited to Defendants' counsel who are based in the U.S. Courts routinely grant Attorneys' Eyes Only designations when personal safety or security concerns are present and especially where, as here, it is necessary to protect "the public interest of encouraging individuals to come forward with evidence of securities fraud." *See In re Moneygram Int'l Secs. Litig.*, 2009 U.S. Dist. LEXIS 145809, at *16 (D. Minn. Oct. 13, 2009); *see also Reese v. Liberty,* 2019 WL 5549219, at *3 (D. Me. Oct. 25, 2019) (observing that "courts have approved attorneys' eyes only designations as a means of balancing prison security concerns against an inmate's right of access to relevant discovery."); *MacNamara v. City of New York,* 249 F.R.D. 70, 96 (S.D.N.Y. 2008) (permitting attorneys' eyes only designation for identities of undercover police officers who participated in the arrest of the plaintiffs). Indeed, in *MacNamara,* Judge Sullivan even allowed the defendant City of New York to seek an order permitting it to disclose the undercover officers' identities only by badge number if it felt that "the disclosure of any such information would pose a risk to the personal safety" of the undercover officers." 249 F.R.D. at 96.

### III.    The Court Should Not Compel Disclosure of PRC Investigator's Identity.

In addition to requesting the identities of the former employees, Defendants asked (initially) for Plaintiffs to provide any agreement(s) that exist with PRC Investigator. Plaintiffs

---

[3] Exhibit C, Associated Press, *China raids offices of business consultancy Capvision*, dated May 9, 2023.



offered to provide the agreement(s) to the extent that they exist, but with PRC Investigator's name redacted. Defendants refused Plaintiffs' offer and now insist that PRC Investigator's name be provided. Similar to the request above, Defendants have no genuine interest in seeking PRC Investigator's name but instead appear intent on using the request for some sort of tactical advantage in the litigation. PRC Investigator has refused to give Plaintiffs permission to disclose PRC Investigator's identity out of fear that they may become a target of the PRC government for providing investigation services into PRC corporations for the benefit of U.S. clients. In addition, disclosure of PRC Investigator's identity serves no practical purpose in this case, and would have a chilling effect on U.S. investors' ability to enforce the securities laws against PRC defendants in private U.S. litigation.

Defendants purport to need PRC Investigator's identity so that Defendants could "independently assess" PRC Investigator's investigation, including by "seeking documents" from PRC Investigator. It is not clear how knowing PRC Investigator's name allows Defendants to "independently assess" its investigation. Defendants conspicuously give no further details on this point. Knowing PRC Investigator's identity does not serve Defendants' purported objective of "independently assess[ing]" PRC Investigator's investigation.

Indeed, ordering the disclosure of PRC Investigator's identity would stifle future securities plaintiffs' ability to enforce securities laws against PRC companies. As the Court is aware, the PSLRA stays discovery in putative securities class actions until the plaintiffs survive defendants' motion(s) to dismiss. Accordingly, securities plaintiffs often must engage private investigators in China to locate and interview witnesses as part of their pre-filing investigation. Very few, if any, PRC-based investigators would be willing to undertake such engagements if they know that their identities may be publicly disclosed, putting them at substantial risk of punitive actions from the Chinese government.

\*          \*          \*

Plaintiffs respectfully request that the Court permit Plaintiffs to disclose FE 2's name under a heightened Attorneys' Eyes Only designation, and deny the remainder of Defendants' requests because: 1) Plaintiff are not withholding any such information; 2) PRC Investigator is no longer in possession of such information; and 3) Defendants have made no attempt at showing they cannot obtain the information through their own means, *i.e.*, internally at Gaotu with the identifying information that has already been provided.

Respectfully,

*/s/ Adam Apton*
Adam M. Apton

Encls.

cc:      All counsel of record (*via CM/ECF*)