SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
―――
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
―――
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
―――
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-3902
DIRECT FAX
(917) 777-3902
EMAIL ADDRESS
ROBERT.FUMERTON@SKADDEN.COM

September 18, 2025

**BY ECF**
Honorable Cheryl L. Pollak
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> RE:   *TCP Diversified Technology Fund v. Gaotu Techedu Inc. et al.*,
> 22-cv-07966 (PKC) (CLP) – Defendants' Reply in Further Support of
> <u>the Letter Motion to Compel Discovery Regarding Confidential Witnesses</u>

Dear Judge Pollak:

On behalf of Defendants, we respectfully write in reply to Plaintiffs' letter regarding the confidential former employees ("FEs") and Plaintiffs' investigative firm. (ECF No. 64 ("Opp.").) Plaintiffs admitted for the first time that their investigative firm intentionally destroyed all electronic records of its investigation and can never disclose the identities or contact information for FE 1 and FE 3.[1]   Plaintiffs' investigator was the only possible source of this information because Plaintiffs' counsel failed their Rule 11 obligation to verify the FEs' identities and allegations ***before*** filing the Amended Complaint.  Defendants have been seriously prejudiced by Plaintiffs' cavalier approach because Judge Chen expressly relied on these unknown, unverified FEs to deny Defendants' motion to dismiss.  (ECF No. 49 ("MTD Op.") at 24.)  Plaintiffs cannot use the FEs as a sword and shield, relying on them to survive the motion to dismiss only to later admit they never knew who the FEs were and cannot identify them for discovery.  Defendants faced this exact issue in another securities case earlier this year (involving one of the same plaintiffs' firms), and the court there held that Defendants were entitled to move to strike the FE allegations, the motion to dismiss should be reevaluated without those allegations, and discovery should be stayed in the meantime.  The same is true here.

---

[1]   The name of FE 2 was apparently found in a notebook, but Plaintiffs still refuse to produce it (or the name of their investigative firm).

### I.   Discovery Should Be Stayed Pending Defendants' Motion to Strike Plaintiffs' FE Allegations and Renew or Reconsider the Motion to Dismiss

Plaintiffs' failure to prevent its investigative firm from "eras[ing]" all its "electronic records . . . pertaining to the investigation conducted in this case" (Opp. at 3), prevents Defendants from ever learning the identities and contact information of FE 1 and FE 3.  Defendants have already attempted, without success, to identify the FEs using the descriptions in the Amended Complaint (ECF No. 31 ("AC").)  Defendants are now left with no way of pursuing discovery of (at least) FE 1 and FE 3, despite Judge Chen specifically contemplating that the FEs' identities would ultimately be disclosed—referring to them as "anonymous *for now*."  (MTD Op. at 24 (emphasis added).)

It is no excuse that the investigator was the one who destroyed the evidence of the FEs' identities.  Plaintiffs' counsel had an obligation to ensure that their investigator preserved (and certainly did not intentionally destroy) all relevant evidence.  Spoliation aside, Plaintiffs' counsel also had an obligation under Rule 11 and the PSLRA to know who the FEs were *before* Plaintiffs included them in the Amended Complaint and relied on them to survive the motion to dismiss. *See In re Lehman Bros. Sec. & ERISA Litig.*, Nos. 10-cv-6637 (LAK), 09 MD 2017 (LAK), 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013) ("When citing alleged confidential witnesses in a complaint, the [Rule 11] certification means that counsel has spoken with these confidential witnesses and *knows who they are*." (emphasis added)); *Long Miao v. Fanhua, Inc.*, No. 18-cv-8183 (PAE), 442 F. Supp. 3d 774, 804 (S.D.N.Y. 2020) ("[confidential witness] allegations—where neither investigated nor corroborated—sit, at best, uneasily with the requirements of Rule 11."); *In re Millennial Media, Inc. Sec. Litig.*, No. 14-cv-7923 (PAE), 2015 WL 3443918, at *11 (S.D.N.Y. May 29, 2015) ("an investigator's memo of an initial witness interview is an inadequate substitute for counsel's independent confirmation of accuracy"); *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 181 (N.D. Ill. 2014) (Rule 11 violation where plaintiffs' counsel "blindly relied on their investigators" at the pleading stage).

Understanding the gravity and ramifications of their failure, Plaintiffs now abandon the FEs and claim they "ended up being relatively unimportant."  (Opp. at 2.)  That is a decision Plaintiffs should have made before including the FEs in the Amended Complaint (AC ¶¶ 119-122, 135), before relying on them to oppose Defendants' motion to dismiss (ECF No. 42 at 24), and before Judge Chen relied on them to sustain Plaintiffs' claims (MTD Op. at 24).  Had Judge Chen known that Plaintiffs' counsel blindly relied on its investigator and did nothing whatsoever to verify the FE accounts, those allegations would have been given no weight and that may well have changed the outcome of her decision.  *See, e.g.*, *In re MINISO Grp. Holding Ltd. Sec. Litig.*, No. 22-cv-9864 (ER), 2024 WL 759246, at *12 (S.D.N.Y. Feb. 23, 2024) (dismissing complaint and holding "it is 'inappropriate to give any weight to . . . [CW] statements' when '[t]here is no suggestion that counsel in this action has spoken with these [CWs] or even knows who they are" (alterations in original) (citation omitted)), *reconsideration denied*, 2025 WL 965688 (Mar. 30, 2025); *In re DraftKings Inc. Sec. Litig.*, No. 21-cv-5739 (PAE), 650 F. Supp. 3d 120, 155 (S.D.N.Y. 2023) (dismissing complaint where "plaintiffs' counsel has not interacted with the unidentified source—and does not even know the source's name").

Incredibly, Defendants faced this same situation earlier this year in another securities case involving one of the two firms representing Plaintiffs here.  *See Wu v. GSX Techedu Inc. et al.*, 2:20-cv-04457 (D.N.J. 2020).  There, as here, plaintiffs relied on anonymous confidential witness

allegations to survive the motion to dismiss, only to later admit in discovery that plaintiffs' counsel had never spoken to the alleged witnesses, did not know who they were, and could not obtain their identities from their investigator in China.  Magistrate Judge José R. Almonte chastised plaintiffs' use of confidential witnesses as a sword and shield: "You're using them to get the information you want but then the shield to prevent defendants from getting the information [they] need so that they can . . . do their own investigation and perhaps even depose these witnesses."  (Ex. K (Transcript) at 39:14-39:19.)  He agreed that the motion to dismiss decision needed to be "re-examine[d]" because it "rel[ied] on confidential informants who now cannot be identified."  (*Id.* at 46:22-47:7.)  As Judge Almonte explained:

> If the reason why the complaint survived the motion to dismiss [is] because of these confidential witnesses who are not available and not identifiable, I think in fairness to the defendants, they should be able to move to strike that information.  If it's stricken, then I think [the district court] will have to reconsider whether or not the complaint should survive the motion to dismiss.

(*Id.* at 49:1-7.)  Judge Almonte further agreed to stay discovery pending these motions because "this is a threshold issue" (*id.* at 46:22) and "could be a game-changer" (*id.* at 48:22).  And indeed, it was.  Rather than oppose the motion to strike, plaintiffs swiftly settled the case.

Likewise here, Defendants intend to move to strike Plaintiffs' FE allegations and move to renew or reconsider the motion to dismiss.  Consistent with Judge Almonte's reasoning and the PSLRA, Defendants should not be subject to costly, burdensome, and potentially unnecessary discovery pending resolution of these threshold issues.  Accordingly, Defendants request that all discovery be stayed.

## II.    The Identities of Plaintiffs' Investigative Firm and FE 2 Cannot Be Withheld or Disclosed on a Restricted Basis Due to Generic "Safety" Concerns

Although the Court need not decide any of the current discovery disputes if discovery is stayed, Plaintiffs' opposition to producing the names of FE 2 and its investigator is meritless.  Plaintiffs' sole basis for withholding this information is its investigator's purported fear of retaliation from the PRC government.[2]

For starters, this cannot justify withholding the name of FE 2.  Plaintiff does not contend that FE 2 has expressed any fear of retaliation or any other objection.  The investigator's purported concerns are no basis to withhold FE 2's information.  *See In re Parmalat Sec. Litig.*, No. 04-cv-0030 (LAK) (HBP), 258 F.R.D. 236, 254 (S.D.N.Y. 2009) (rejecting as "pure speculation" defendant's refusal to disclose certain client information for fear of retaliation where the client "ha[d] not intervened to object to the disclosure of its information").  Contrary to Plaintiffs' suggestion, Defendants' need for FE 2's name and contact information is "genuine."  (Opp. at 2, 4.)  This is the first step to testing the veracity of FE 2's allegations, including "whether the [FE]

---

[2]    Contrary to their prior representations (ECF No. 63, Ex. I), Plaintiffs now make no mention—nor can they—of any concerns of potential repercussions from the Company.  Plaintiffs also do not dispute, and thereby concede, that the identities and contact information of the FEs and its investigative firm are relevant, discoverable, and not entitled to work product protection.  *See Belliard v. Koryeo Int'l Corp.*, No. 14-cv-03495 (ENV) (ST), 2019 WL 13213671, at *7 (E.D.N.Y. Mar. 4, 2019) ("The failure to respond to defendants' argument is tantamount to waiver for these plaintiffs.").

in fact had a firsthand basis for his or her allegations, or had been misquoted" and other "reasons to credit [or] discredit" their allegations. *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, No. 08-cv-4063 (PAE), 278 F.R.D. 335, 339 (S.D.N.Y. 2011).[3]

The investigator's purported fear also is not a valid basis to withhold its name and contact information.[4]  Plaintiffs provide no detail about the supposed retaliation the investigator could face. *See Arbitron*, 278 F.R.D. at 344 (compelling disclosure of [CW] identities where there was "no reliable, non-conclusory basis to find that any of [them] face[d] a risk of retaliation"); *In re Marsh & McLennan Cos. Inc. Sec. Litig.*, Nos. 04-cv-8144 (SWK), 2008 WL 2941215, at *5 (S.D.N.Y. July 30, 2008) ("[C]onclusory statements regarding retaliation . . . will not suffice."). Nor do they cite a single instance of a similar investigative firm in China being retaliated against for providing information in this context.  The three purported examples they cite all involved issues of national security, which Plaintiffs do not (and could not) assert are implicated here. Moreover, all three incidents occurred before Plaintiffs filed the Amended Complaint on October 16, 2023. (ECF No. 31.)  If the investigator was concerned about these incidents, it could have informed Plaintiffs to exclude the FEs' statements from the Amended Complaint.  But it cannot do so now, nearly two years later.  Since Plaintiffs chose to include the unverified FE allegations from the investigator, they cannot now evade their disclosure obligations under the Federal Rules. *See Goldman v. Barrett*, 825 F. App'x 35, 39 (2d Cir. 2020) (imposing sanctions despite plaintiffs' assertion that a non-party "refused to 'reveal names and details regarding [factual allegations] at issue unless the information was exchanged in accordance with [Chinese] law' and 'international process'" (second alteration in original) (citation omitted)).[5]

Respectfully submitted,

*/s/ Robert A. Fumerton*

Robert A. Fumerton

cc: All Counsel of Record (via ECF)

---

[3]  FE 2's information remains relevant and discoverable even if Plaintiffs no longer rely on FE 2. *See In re Marsh & McLennan*, 2008 WL 2941215, at *3 ("[T]he identities of all CWs, even those whom [l]ead [p]laintiffs do not intend to call at trial, are discoverable . . . ."); *In re Bear Stearns Cos. Inc. Sec., Derivative & ERISA Litig.*, 08 MD No. 1963, 2012 WL 259326, at *2 (S.D.N.Y. Jan. 27, 2012) (compelling disclosure of confidential witnesses' identities despite lead plaintiff's contention it "will not rely on the confidential witnesses at trial").

[4]  This would allow Defendants to seek discovery from the investigator and assess whether "the investigator may have mistaken hearsay, opinion, or conjecture for facts." *In re Millennial Media*, 2015 WL 3443918, at *13.

[5]  Plaintiffs' cases are inapposite.  In *Reese v. Liberty*, defendants articulated specific concerns regarding the disclosure of Department of Corrections' documents because it could allow prisoners to "forecast how corrections officers would respond in given circumstances, enabling them to frustrate legitimate penological efforts, and putting the lives of corrections officers at risk."  2019 WL 5549219, at *2 (D. Me. Oct. 25, 2019).  Likewise, in *MacNamara v. City of New York*, defendants stated disclosure of the identities of undercover officers would result in them "no longer be[ing] able to effectively conduct their duties in an anonymous capacity of detecting criminal activity and apprehending criminals."  249 F.R.D. 70, 95 (S.D.N.Y. 2008).  In *In re MoneyGram International, Inc. Securities Litigation*, plaintiffs disclosed all their confidential sources, albeit as part of a larger list in their initial disclosures, and the court's order acknowledged "it [wa]s only a matter of time before [d]efendants learn the identities of the confidential sources."  2009 WL 10678639, at *5 (D. Minn. Oct. 13, 2009).