```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

TCP DIVERSIFIED TECHNOLOGY FUND,
Individually and On Behalf of All Others
Similarly Situated,

                          Plaintiffs,
                                                                    ORDER
                -against-                                       22 CV 7966 (PKC) (CLP)

GAOTU TECHEDU INC, F/K/A/ GSX
TECHEDU INC., XIANGDONG CHEN, and
NAN SHEN,

                          Defendants.
----------------------------------------------------------X
```

**POLLAK**, United States Magistrate Judge:

Lead plaintiff TCP Diversified Technology Fund and Named Plaintiff Jun Ye have brought a putative class action against defendant entity Gaotu Techedu Inc. ("Gaotu"), as well as individual defendants Xiangdong Chen and Nan Shen, for violations of the federal securities law, under the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. (Am. Compl.[1] ¶ 6). Plaintiffs are stockholders who acquired publicly-traded shares of Gaotu between March 5, 2021 and July 23, 2021 (the "class period"), and who seek damages for alleged misrepresentations and omissions by defendants regarding the impact on Gaotu's business of the People's Republic of China (PRC)'s then-new Double Reduction Regulations ("DRR"). (Id. ¶¶ 1, 2).

---

[1] Citations to "Am. Compl." refer to plaintiffs' Amended Complaint, filed October 16, 2023 (ECF No. 31).

1

Currently before the Court are plaintiffs' "Motion for a pre-motion conference" ("Pl. Mot.[2]") and defendants' Motion to compel discovery ("Def. Mot."[3]).  For the reasons set forth below, defendants' Motion is denied without prejudice to renew.  Plaintiffs' Motion is granted in part and denied in part.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Joshua Zhang filed a Complaint on December 30, 2022, alleging that defendants Xiangdong Chen, Gaotu Techedu Inc. f/k/a GSX Techedu Inc., and Nan Shen knowingly or recklessly made materially false and misleading statements during the alleged class period[4] of March 5, 2021 to July 23, 2021.  (Compl.[5] ¶¶ 1, 2, 7-9, 17-19).  These false statements allegedly misled investors in Gaotu, an online after-school tutoring company, about the impending adverse effects on Gaotu's operations and the value of Gaotu securities of the DRR, which was a new set of regulations issued in July 2021 by the government of the People's Republic of China, relating to online tutoring.  (Id. ¶¶ 1, 19-21, 38-39).  On August 16, 2023, the Court appointed TCP Diversified Technology Fund as the lead plaintiff in this action.  (ECF No. 28).  On October 16, 2023, plaintiffs filed an Amended Complaint (ECF No. 31).

On June 20, 2024, defendants filed a motion to dismiss the Amended Complaint.  (ECF Nos. 39-40).  The district court denied defendants' motion to dismiss, finding that, between April

---

[2] Citations to "Pl. Mot." refer to plaintiffs' "Letter Motion for Pre-Motion Conference," filed September 8, 2025 (ECF No. 62).  The Court does not require pre-motion conferences for discovery disputes.  Plaintiff's Motion is construed as a motion to compel discovery.

[3] Citations to "Def. Mot." refer to defendants' "Letter Motion for Discovery," filed September 8, 2025 (ECF No. 63).

[4] The class period has since been shortened to April 26, 2021 to July 23, 2021, in light of the district court's ruling that plaintiffs' claims based on March 5, 2021, earnings call statements are not actionable.  (ECF No. 49, at 27; see also Pl. Mot. at 2 (acknowledging this date range).

[5] Citations to "Compl." refer to plaintiffs' initial Complaint, filed December 30, 2022 (ECF No. 1).

2

26, 2021 and July 23, 2021, defendants had misled investors in Gaotu securities by making public statements concealing the DRR's effects on Gaotu's business and share value—namely, that the DRR prohibited after-school tutoring companies for grades K-9 from raising capital or going public.  (ECF No. 49).

Defendants filed their Answer to plaintiffs' Amended Complaint on April 7, 2025.  (ECF No. 55).  The parties began engaging in discovery and filed a joint status report on August 6, 2025, informing the Court of the progress of discovery.  (ECF No. 61).  On September 8, 2025, pursuant to the Court's Order, dated August 7, 2025, the parties each submitted a motion identifying outstanding discovery disputes.  These motions are now before the Court.

In plaintiffs' pending Motion, plaintiffs ask the Court to adopt plaintiffs' proposed Relevant Time Period for document production, compel defendants to supplement their responses to plaintiffs' Interrogatory No. 4, and adjust the current discovery schedule given the unclear timeline of the PRC authorities' review of the documents plaintiffs request.  (Pl. Mot.). Defendants, in their Motion for a discovery order, ask the Court to compel plaintiffs to produce identifying information about certain confidential witnesses, referred to as the "former employees" ("FE"s), on whose testimony plaintiffs' allegations are partly founded.  (Def. Mot.). The Court addresses each issue separately.

DISCUSSION

I. Plaintiffs' Motion to Compel

   A. Relevant Time Period

      1) The Parties' Arguments

Plaintiffs assert that the Relevant Time Period for document production should span from January 1, 2021 to April 26, 2022. (Pl. Mot. at 1). Plaintiffs ask the Court to Order defendants to produce responsive documents dated between January 1, 2021, and April 26, 2022, because, according to plaintiffs, this fifteen-month period covers the fiscal year in which the alleged events occurred and ends on the date defendant company Gaotu issued its annual report for that fiscal year. (Id. at 2). Plaintiffs seek the Court's adoption of this date range because they intend to show "various, significant business changes that [defendants] implemented in the months leading up to the DRR followed by the significant business changes that went into effect following the DRR." (Id. at 3).

According to plaintiffs, any post-class period evidence of "adaptive measures" by Gaotu may be probative of defendants' knowledge and planning that predated the PRC's public disclosure about the DRR, including during the class period, when defendants made the allegedly misleading statements. (Id. (citing In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 73 (2d Cir. 2001) (holding that "post-class period data may be relevant to determining what a defendant knew or should have known during the class period"))). Plaintiffs seek to conduct further discovery into how the changes in Gaotu's business came about, and what defendants were planning in the leadup to the DRR's official enactment. (Pl. Reply[6] at 1-2). Plaintiffs seek to

---

[6] Citations to "Pl. Reply" refer to plaintiffs' "Reply in Support" of their "Letter Motion for Pre Motion Conference," filed September 18, 2025 (ECF No. 66).

4

extend the Relevant Time Period to April 26, 2022, the date Gaotu's annual report was published, so that they can discover "the most meaningful and immediate evidence of Defendants' preparation for and knowledge of the DRR prior to and after its implementation." (Pl. Mot. at 2).

By contrast, defendants urge the Court to adopt a more restrictive Relevant Time Period. Plaintiffs indicate that defendants initially agreed to an eleven-month time period: January 1, 2021 to September 30, 2021, and February 26, 2022 to April 26, 2022. (Pl. Mot. at 3). In their response to plaintiffs' motion, however, defendants now argue that the only relevant evidence relates to what defendants knew before the DRR's release in July 2021 and in the three-month putative class period (April 26, 2021 to July 23, 2021). (Def. Opp.[7] at 1-2). Defendants acknowledge that they had initially compromised on a nine-month total range, from January 1, 2021 to September 30, 2021, but now insist that "the Relevant Time Period in this case should be limited to January 1, 2021 to July 23, 2021." (Id. at 1).

Defendants argue that there is no good reason to extend the Relevant Time Period "well beyond the end of the class period." (Id. at 3). According to defendants, only the events leading up to and including the putative class period, not those postdating it, are relevant, because only the documents that predate the July 2021 public announcement of the DRR can demonstrate the "pattern of anticipatory actions that would imply Defendants' awareness of the impending DRR." (Id. at 2 (quoting Pl. Mot. at 3)). Defendants argue that "evidence of defendants' knowledge after the class period is relevant only if it also demonstrates defendants' knowledge before or during the class period." (Def. Opp. at 2 (citing In re Turquoise Hill Res. Ltd. Sec. Litig., No. 20 CV 8585, 2023 WL 6118208 (S.D.N.Y. July 28, 2023))). Defendants dispute that post-class

---

[7] Citations to "Def. Opp." refer to "Defendants' Response to Letter Motion for Pre Motion Conference," filed September 15, 2025 (ECF No. 65).

5

period information shows defendants' knowledge or recklessness as to the statements they made during the class period. (Id.) In particular, defendants argue that the Gaotu annual report, published in April 2022 and showing compliance with the DRR, "has no bearing on whether Defendants knew of the DRR before its official release." (Id.)

2) Analysis

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any nonprivileged material that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance under Rule 26 has been "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in th[e] case.'" Giacchetto v. Patchogue-Medford Union Free Sch. Dist., 293 F.R.D. 112, 114 (E.D.N.Y. May 6, 2013) (alteration in original) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). In reviewing plaintiff's motion, the Court considers that while the scope of discovery is "broad," it is not "limitless." Fears v. Wilhelmina Model Agency, Inc., No. 02 CV 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004). The party seeking discovery must show that it is not engaging in "merely a fishing expedition." Carl v. Edwards, No. 16 CV 3863, 2017 WL 4271443, at *3 (E.D.N.Y. Sept. 25, 2017) (quoting Barbara v. MarineMax, Inc., No. 12 CV 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013)).

In a class action lawsuit, a class period often determines the boundaries of a Relevant Time Period. See, e.g., In re Parmalat Sec. Litig., 497 F. Supp. 2d 526, 539, n.77 (S.D.N.Y. 2007) (noting that a document written after the close of the class period did not demonstrate defendants' policies during the relevant time period); Nypl v. JPMorgan Chase & Co., No. 15 CV 9300, 2018 WL 1276869, at *4 (S.D.N.Y. Mar. 12, 2018) (noting that "[c]ourts have

6

dismissed claims that are outside part of a claimed class period where there are no specific facts establishing the existence of a conspiracy for the entire time period alleged"). However, this is not always the case. In In re Turquoise Hill Res. Ltd. Sec. Litig., 2023 WL 6118208, at *1, the court found that documents preceding the established class period were relevant to defendants' knowledge during the class period, and that the relevant time period encompassed but also extended earlier than the class period. As for documents that postdated the class period, the court held that those were not relevant because the information contained in those documents was not known to defendants at the time of the class period. Id. Presumably, if the defendants had known about the information in these post-class period documents at the time of the class period, the documents might have been deemed relevant.

In light of these standards, the Court disagrees with defendants that post-class period information is not probative of defendants' knowledge of the DRR, and finds the timeframe proposed by plaintiff appropriate. Whether defendants had knowledge of the DRR before the misleading statements they made to Gaotu investors is directly probative of whether defendants knowingly or recklessly made those statements. Information about significant business changes implemented by defendants in the months both leading up to and following the DRR's implementation may lead to the discovery of admissible evidence relating to defendants' knowledge and plans made prior to the public announcement of the DRR. As plaintiffs point out, evidence indicating that the "adaptive measures," which defendants allegedly put in place after the public announcement of the DRR, were discussed or planned in advance of the public announcement, may support claims of knowing or reckless misstatements. (Pl. Mot. at 3). To determine the extent of defendants' knowledge of the DRR before it was announced to the public in July 2021, plaintiffs need to be able to conduct discovery into documents dated before and

7

after the three-month class period.  Therefore, the Court finds that plaintiffs' proposed timeframe, up to and including the date of publication of Gaotu's annual report, is proportional to the needs of the case.  Since there has been no explanation why the burden of providing this information outweighs its potential relevance, the Court adopts plaintiffs' Relevant Time Period for purposes of discovery.

B.  Interrogatory No. 4

On May 27, 2025, plaintiffs sent defendants a set of interrogatories.  (Pl. Mot. Ex. A[8]).  At issue in plaintiffs' Motion is what the parties refer to as "Interrogatory No. 4," in which plaintiffs asked defendants to

> Identify all instances of communication by and/or between Defendants and the PRC central or local government agencies at any level, including the Ministry of Education, the Beijing Municipal Committee of the Communist Party of China, the Beijing Municipal Education Commission, and its Haidan Branch concerning regulation of the for-profit tutoring industry, including the DRR. Include the names of participants, dates, locations, content of the communications, and the methods used (e.g., email, WeChat, or in-person meetings).

(Id.)

Specifically, plaintiffs ask for "dates, times, locations, attendees, and content" of an estimated six meetings defendants attended with the Beijing Education Commission and other after-school tutoring companies.  (Pl. Mot. at 6).  Plaintiffs ask not only about the DRR, but "any regulation concerning the 'for-profit tutoring industry.'"  (Id. at 5).  Plaintiffs contend that these

---

[8] Plaintiff's Exhibit A (ECF No. 62 Attachment 1) consists of defendants' responses to the interrogatories plaintiffs sent to defendants, dated May 27, 2025.

8

meetings would have cemented defendants' understanding of the DRR, as some of them occurred contemporaneously with the PRC government's "Two Sessions" parliamentary deliberations in March 2021, through which the defendants would have learned of the DRR and its impact on Gaotu's business. (Id.) Due to the fact that, apparently, no electronic devices or notetaking were allowed at the meetings with the Beijing Education Commission, plaintiffs claim they have no way of knowing what went on at these meetings. (Pl. Reply at 2). Plaintiffs insist they will be prejudiced by this lack of information ahead of taking the depositions of the individuals who attended those meetings. (Id.) For these reasons, plaintiffs argue that defendants should be Ordered to submit a more complete response to Interrogatory No. 4.

In their response to Interrogatory No. 4, defendants disclosed the name of Gaotu's head of administration, Lulu Huang, who attended the monthly in-person meetings with the Beijing Education Commission and other education companies. (Pl. Mot. Ex. A at 11). Defendants maintain that the discussions at these meetings contemplated the continuing existence of the for-profit tutoring industry, not its impending complete ban in China by the DRR. (Def. Opp. at 4). According to defendants, none of the discussions pertained to the DRR, which is the only regulation relevant to plaintiffs' Complaint, and thus plaintiffs' request for any communication about any regulation of the for-profit tutoring industry is overbroad. (Id. at 3). Defendants also assert that nobody from Gaotu attended the "Two Sessions" deliberations that occurred around the time of the Beijing Education Commission meetings (id. at 4), and that the district court already rejected plaintiffs' reliance on the "Two Sessions" deliberations when it dismissed plaintiffs' allegations regarding statements defendants made in March 2021. (Id. (citing ECF No.

9

49 at 14)). [9]

In determining the proper scope of discovery in a given case, courts should consider, among other things, "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Having considered these factors, the Court agrees that to the extent that plaintiffs' request in Interrogatory No. 4 seeks information about all communications between any defendants and any PRC agency, about any regulation of the for-profit tutoring industry, the request is overbroad. Moreover, while plaintiffs may have good reason for seeking information about the "content" of the meetings with the Beijing Education Commission, a narrative of what transpired at the meetings is not only burdensome but more appropriate for deposition testimony.

Accordingly, defendants are Ordered to produce information regarding the dates, times, locations, and attendees of the monthly meetings with the Beijing Municipal Education Commission, identified in defendants' responses to Interrogatory No. 4. (Pl. Mot. Ex. A). The production of succinct, specific information such as the date or location of each meeting, or a list of the attendees, is a reasonable request. If plaintiffs request any documents, such as a meeting agenda or minutes of the meeting, prepared for or after the meetings, or documents specifically referred to in the meetings, those documents may also be relevant and are subject to production.

---

[9] The district court rejected plaintiffs' reliance on the fact that the "Two Sessions" deliberations were ongoing on March 5, 2021, to allege that defendants made misleading statements about the future of the tutoring industry on that day. (ECF No. 49 at 14 (holding that this allegation, "without more, fails to establish a plausible claim of material misrepresentation"). However, this ruling does not mean that contemporaneous meetings with the Beijing Education Commission could not have concerned similar subject matter as that discussed in the "Two Sessions," or that defendants could not have found out what was discussed in the "Two Sessions." This Court is concerned with whether information might have existed during the time of the Beijing Education Commission meetings, which defendants did attend, that would indicate defendants' knowledge about the impending DRR; it is not concerned with whether plaintiffs have established that the March 5 statements were misleading.

10

However, defendants are not required to narrate the contents of the meetings, or discussions that may have occurred during the meetings; should plaintiffs seek such information, plaintiffs may extract it through depositions. Defendants are Ordered to supplement their response to Interrogatory No. 4, according to the Court's instructions, by **November 7, 2025**.

C.  Extension of Fact Discovery Deadline

Defendants claim that, to the extent plaintiffs request documents located in the PRC, defendants cannot produce those documents until they obtain permission from government authorities in the PRC. (Def. Opp. at 5). Defendants have engaged a PRC-based law firm to conduct a review of the documents to be produced and ensure that production would comply with PRC data and privacy laws. (Id.) Defendants describe the PRC review process as "continually evolving" and one in which defendants have no visibility or control, but have agreed to notify plaintiffs when the PRC review is complete. (Id.) Until then, defendants maintain that neither defendants' outside counsel, nor plaintiffs, can access the documents. (Id.) As it is unclear when the PRC review will be complete, defendants are amenable to extending the deposition schedule, but only once fact discovery is substantially complete in January. (Id.)

According to plaintiffs, defendants have not provided any insight into the PRC review process or assurances that the PRC review has even begun. (Pl. Mot. at 6). Plaintiffs question how the process can be underway when the parties have not yet agreed on the Relevant Time Period and set ESI search terms. (Id.) Given the lack of transparency into the review process and timeline, plaintiffs take issue with defendants' suggestion that the January 16, 2026, deadline for "substantial completion" of discovery suffices. (Pl. Mot. at 6; Pl. Reply at 3). Plaintiffs ask

11

the Court to adjust and suspend the case schedule, pending additional details and commitments from defendants about the PRC review. (Pl. Mot. at 7). Otherwise, plaintiffs claim they will be prejudiced by being forced to schedule overseas depositions without complete document production. (Pl. Reply at 3).

The Court agrees with plaintiffs that, given the unclear timeline regarding the PRC review, an extension of the January 16, 2026, fact discovery deadline is prudent to prevent a compression of the production and deposition timeframe. (Pl. Mot. at 6). The Court hereby adjourns the current discovery deadline pending the completion of the PRC document review. At this time, the Court declines to set a firm date for the end of fact discovery. Defendants shall provide a status report by **Deember 15, 2025** indicating the status of the PRC review.

II. Defendants' Motion

Defendants' Motion for a discovery order primarily centers on three confidential witnesses, described as former employees ("FE"s) of Gaotu, on whose information plaintiffs partly base their allegations. (Def. Mot. at 1). Plaintiffs retained an investigative firm in China to interview FEs who could provide information about what defendants knew and allegedly concealed from Gaotu investors about the DRR's impending impact on the company. (Pl. Opp.[10] at 1). These FEs apparently alleged that defendants knew about the DRR prior to its official release. (Def. Mot. at 1 (citing Am. Compl. ¶¶ 120-22, 135)). Defendants argue that, because defendants' motion to dismiss was denied by the district court based partly on the FEs'

---

[10] Citations to "Pl. Opp." refer to plaintiffs' "Response in Opposition to Letter Motion for Discovery," filed on September 15, 2025 (ECF No. 64).

12

allegations, plaintiffs should be required to disclose the identities of those FEs. (Def. Reply[11] at 2). Defendants demand that plaintiffs produce both the names and contact information of the FEs, as well as the name of the investigative firm, so that they can "independently assess" the veracity of the FEs' assertions and the investigation on which plaintiffs' claims rely. (Def. Mot. at 2-3). In addition, defendants ask that the case be stayed until defendants' motion to dismiss can be reevaluated once any references to the FEs' allegations are struck. (Def. Reply at 2).

In response, plaintiffs state that the identifying information relating to the three FEs was inadvertently erased when the PRC-based investigative firm that interviewed them destroyed certain electronic records to protect itself and its sources. (Pl. Opp. at 3). Plaintiffs cite the recent history of PRC government raids of firms that investigate PRC-based entities for the benefit of foreign clients, to explain why the investigative firm's summaries of the FE interviews did not disclose any names or contact information. (Id. at 1, 2). Plaintiffs had used those summaries to draft their Complaint, indicating the FEs' roles, dates of employment, and the Gaotu locations where the FEs worked. (Id. at 2). According to plaintiffs, the investigative firm's only remaining record of these interviews is a physical notebook, which contains only the name of one FE—FE 2—and no contact information. (Id. at 3). The names and contact information of the other two FEs are allegedly no longer accessible. (Id.)

Destruction of the records aside, plaintiffs argue that the FEs' allegations turned out to be "relatively unimportant," pointing to the fact that the district court only mentioned the FEs' testimony in two paragraphs of its order denying defendants' motion to dismiss. (Pl. Opp. at 2 (referring to ECF No. 49)). Similarly, plaintiffs only mention the FEs in five paragraphs of their

---

[11] Citations to "Def. Reply" refer to "Defendants' Reply in Further Support of the Letter Motion to Compel Discovery Regarding Confidential Witnesses," filed on September 18, 2025 (ECF No. 67).

13

Complaint. (Id.) Plaintiffs offer to provide the requested information for FE 2, under the condition that it only be provided to U.S.-based counsel Skadden, Arps, Slate, Meagher & Flom LLP—not to anyone in the PRC—under an Attorney's Eyes Only (AEO) designation. (Id. at 3). As for the name of the investigative firm, plaintiffs claim that the firm has refused to allow plaintiffs to reveal its name to defendants, out of a fear that the firm will be targeted by the PRC government. (Id. at 4).

Defendants argue that plaintiffs cannot use these FEs as both "a sword and a shield"; in other words, plaintiffs cannot use the FEs' information to bolster their allegations but now refuse to disclose their identities. (Def. Reply at 1). According to defendants, it was plaintiffs' duty to ensure that the information identifying the FEs would be preserved, and plaintiffs may not downplay the importance of that information after it has been spoliated by the investigative firm. (Id. at 2). Defendants argue that plaintiffs' counsel "blindly" relied on the FEs' allegations to survive the motion to dismiss, without having ever spoken to the FEs or even known their identities. (Def. Reply at 2-3). Defendants cite a similar situation they faced in Wu v. GSX Techedu Inc. et al., 20 CV 4457 (D.N.J. 2020), in which their opposing counsel was one of the law firms representing plaintiffs in the instant case. (Id. (citing Def. Ex. K[12])). In that case, the Magistrate Judge criticized plaintiffs' sword-and-shield use of confidential witnesses and agreed that the information provided by those witnesses needed to be struck, and the motion to dismiss in that case be reconsidered, because of plaintiffs' reliance on "confidential informants who now cannot be identified." (Id. (citing Def. Ex. K at 46)). In that case, the judge agreed to stay discovery pending resolution of that issue. (Id. (citing Def. Ex. K at 49)).

---

[12] Defendants' Exhibit K is the transcript of a hearing held before U.S. Magistrate Judge Jose R. Almonte of the District of New Jersey in the matter Wu v. GSX Techedu Inc. et al., 20 CV 4457 (D.N.J. 2020) (ECF No. 67 Attachment 1).

14

Defendants object to plaintiffs' withholding of the FEs' identities on several additional grounds, including that the case law does not grant work product protection to names of confidential witnesses, and that the parties' protective order does not permit designating this type of information as AEO.  (Def. Mot. at 5 (citing ECF No. 60)).  Defendants also point out that the district court's Order denying defendants' motion to dismiss referred to the FEs as "anonymous for now."  (Def. Reply at 2 (citing ECF No. 49 at 24)).  Finally, defendants argue that plaintiffs' safety concerns do not justify withholding the FEs' identities, because plaintiffs have not contended that the FEs themselves have expressed fear of retaliation or any other objection to disclosure; only the investigative firm has purportedly expressed such a fear.  (Def. Reply at 3).  Defendants note that if the investigative firm had any safety concerns, it could have asked plaintiffs to exclude the FEs' statements from plaintiffs' Amended Complaint, filed two years ago on October 16, 2023.  (Id. at 4).

The Court agrees with defendants that because plaintiffs chose to rely on the information provided by these confidential witnesses, their identifying information and the name of the investigative firm remain discoverable.  The fact that the district court, in ruling on the motion to dismiss, relied on the FEs' statements to a lesser degree than plaintiffs expected (Pl. Opp. at 2) does not render the interviews immaterial or irrelevant to this action.  Despite plaintiffs' efforts to downplay the importance of the interviews, the Court finds that the destruction of that information, which plaintiff claims occurred inadvertently when the investigative firm erased electronic records (Pl. Opp. at 3), constitutes spoliation of evidence.  Defendants are entitled to whatever relevant information remains about these FEs.  Furthermore, while plaintiffs claim that disclosing the name of the investigative firm would not assist defendants in independently assessing the firm's investigation (id. at 4), the Court finds that disclosure of the firm's name

15

would allow defendants to conduct further discovery in connection with the firm and the scope of its investigation.

However, given the plaintiffs' concerns regarding potential retaliation against the witnesses and the investigative firm, the Court agrees with plaintiffs that there is a risk to the safety of the individuals and the firm if the PRC should learn of their identities. In their papers, defendants have not identified a reason for seeking the identities of the FEs other than to investigate their credibility. Defendants represent that they seek the identifying information for FE 2 in order to "[test] the veracity of FE 2's allegations" (Def. Reply at 3), including whether FE 2 "in fact had a firsthand basis for his or her allegations" and to determine whether there are "other 'reasons' to credit [or] discredit their allegations." (Def. Mot. at 3 (citing Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc., No. 08 CV 4063, 278 F.R.D. 335, 339 (S.D.N.Y. 2011))). At this time, defendants have not expressed any intention to depose the FEs. Instead, defendants explicitly seek reconsideration of the district court's decision which was based in part on the statements of these witnesses. If, as it now appears, these witnesses are not available or even identifiable, the district court may disregard their statements, rendering moot any further reliance on their testimony and need for further discovery into their credibility. Thus, in the interest of avoiding any risk to the safety of the FEs and the investigators, the Court denies the request for disclosure at this time, without prejudice to defendants' renewed request after the district court considers their motion to revisit the question of dismissal, should the court choose to do so.

Any motion for reconsideration of a motion to dismiss must be brought before the district judge assigned to the case. Given plaintiffs' representation that they are unable to produce the

16

identities of two of the FEs, defendants are free to make an application to the district court to strike the testimony of the FEs and to reconsider defendants' motion to dismiss.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
October 24, 2025

/s/ Cheryl L. Pollak
_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York