SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
WWW.SKADDEN.COM

DIRECT DIAL
(212) 735-3902
DIRECT FAX
(917) 777-3902
EMAIL ADDRESS
ROBERT.FUMERTON@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

December 5, 2025

**BY ECF**

Honorable Pamela K. Chen
United States District Judge
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> RE:   *TCP Diversified Technology Fund v. Gaotu Techedu Inc. et al.*,
> 22-cv-07966 (PKC) (CLP) – Defendants' Supplemental Submission
> In Support of Their Motion to Strike and Renewed Motion to Dismiss

Dear Judge Chen:

On behalf of Defendants, we respectfully write pursuant to Your Honor's November 20, 2025 Order to provide supplemental support for Defendants' motion to strike Plaintiffs' former employee ("FE") allegations and renew Defendants' motion to dismiss the Amended Complaint (ECF No. 31 ("AC")). As demonstrated in Defendants' pre-motion conference request (ECF No. 73), Plaintiffs' FE allegations should be stricken for two independent reasons. First, in violation of Rule 11, Plaintiffs' counsel did nothing to verify any of the allegations attributed to the FEs before including them in the Amended Complaint. Indeed, Plaintiffs' counsel has ***never*** spoken with any of the purported FEs. Second, Plaintiffs cannot or will not disclose the names and contact information for the FEs in discovery, thereby precluding Defendants from testing the veracity of the FEs' allegations. Each of these failings separately warrants striking the FE allegations in their entirety. Because the Court expressly relied on the FE allegations to hold that Plaintiffs' adequately plead scienter, without them the Amended Complaint should be dismissed.[1]

---

[1]   Defendants also request that discovery be stayed pending the resolution of this motion. As Plaintiffs' own authority makes clear, a discretionary stay of discovery can "be supported by 'substantial arguments for dismissal.'" *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (citing *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002)). That is the case here, where Defendants make a substantial argument that the Amended Complaint should be
*(cont'd)*

Honorable Pamela K. Chen
December 5, 2025
Page 2

### I.    **Plaintiffs' Unverified FE Allegations Should Be Stricken**

As set forth in more detail in Defendants' pre-motion conference request, the Court should strike Plaintiffs' FE allegations because Plaintiffs' counsel did not conduct a reasonable investigation as required by Rule 11 before filing their Amended Complaint. (*See* ECF No. 73.) Plaintiffs' counsel admits they ***never*** spoke with any of the purported FEs to verify their allegations and instead blindly relied on anonymized accounts from a private investigative firm. Rule 11 requires more. *See In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013) (Kaplan, J.) ("When citing alleged confidential witnesses in a complaint, the [Rule 11] certification means that counsel has spoken with these confidential witnesses and knows who they are."); *see also VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at *7 (S.D.N.Y. Sept. 16, 2013) (Cote, J.) (counsel has a "'personal, non-delegable responsibility' under Rule 11 to 'validate the truth and legal reasonableness of the papers filed[,]'" including verifying "at least that the witnesses did in fact make such statements").[2] Accordingly, courts routinely reject unverified anonymous allegations. *See*, *e.g.*, *Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at *3 (S.D.N.Y. Aug. 19, 2022) (Furman, J.) (disregarding allegations from "former employees whom [plaintiff's counsel] did not interview"). Worse still, Plaintiffs admit their investigative firm destroyed its records regarding the FEs. (ECF No. 64.)

Contrary to Plaintiffs' assertions (Opp. at 2), Defendants do not dispute Plaintiffs' counsel may ***initially*** rely on investigators to find and screen potential confidential witnesses. However, before including such allegations in a complaint, counsel must personally verify all statements attributed to the FEs. *See City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 181 (N.D. Ill. 2014) ("Although an attorney is certainly entitled to rely upon information obtained from others, including investigators . . . there must be reasonable cause to trust the accuracy of that information, and a lawyer may not simply put his head in the sand and forgo any attempt to verify information."). Indeed, Plaintiffs' own authority (Opp. at 2) confirms as much. *See Moshell v. Sasol Ltd.*, 2021 WL 3174414, at *817 (S.D.N.Y. July 24, 2021) (Cronan, J.) ("[C]ounsel's failure to affirm the truth of the statements attributed to a witness may factor in to the analysis of whether counsel conducted a reasonable pre-filing investigation."); *Teva*, 671 F. Supp. 3d at 194

---

dismissed if the FE allegations on which the Court previously relied to deny the motion to dismiss are stricken. In fact, when Defendants faced this same situation earlier this year in another securities case, the court stayed discovery pending Defendants' motion to strike and reconsider the motion to dismiss. *Wu v. GSX Techedu Inc.*, No. 2:20-cv-04457 (MEF) (JRA), ECF No. 134 at 49:20-49:22 (D.N.J. Feb. 4, 2025).

[2]    Plaintiffs' cases (ECF No. 75 ("Opp.") at 2) are not to the contrary. *See Moshell v. Sasol Ltd.*, 2021 WL 3174414 at *17 (S.D.N.Y. July 24, 2021) (Cronan, J.) (plaintiffs' counsel "confirmed the accuracy of" CW-1s' statements by "reading the relevant allegations to CW-1 verbatim"); *In re Teva Sec. Litig.*, 671 F. Supp. 3d 147, 194 (D. Conn. 2023) (confidential witnesses cited by opt-out plaintiffs had been verified by counsel in underlying class action, which the court "already credited"); *In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at *11 (S.D.N.Y. May 29, 2015) ("[W]here a [c]omplaint proposes to rely on quotes drawn from an investigator's memo recounting an unrecorded witness interview, it is reasonable to expect counsel, before filing the [c]omplaint, to attempt to confirm with the witness the statements that counsel proposes to attribute to him and to assure that the [c]omplaint is presenting these statements in fair context."); *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *13 (E.D.N.Y. Mar. 31, 2017) (declining to apply *Millennial Media* because "[p]laintiff's counsel conducted its investigation over 10 years ago, long before *Millennial Media* was decided in 2015" and "it would be prejudicial to apply it retroactively").

Honorable Pamela K. Chen
December 5, 2025
Page 3

(distinguishing cases that "took particular issue with counsel's reliance on an investigator's memo").

Plaintiffs argue that "many courts have rejected motions to dismiss or strike allegations simply because the plaintiffs do not know the identify of confidential witnesses" (Opp. at 2), but neither case they cite even addressed a motion to strike and both involved opt-out plaintiffs who copied confidential witness allegations from the underlying class actions. *See Schwab Cap. Tr. v. Celgene Corp.*, 2021 WL 1085474, at *10 (D.N.J. Mar. 22, 2021); *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 225 (S.D.N.Y. 2008). There, at least someone with Rule 11 obligations (counsel in the underlying class actions) had verified the confidential witnesses allegations.[3] That is not the case here, where neither Plaintiffs' counsel nor anyone subject to Rule 11 has spoken with the FEs to verify their allegations. Instead, Plaintiffs rely on a third-party investigator with no ethical or professional obligations to this Court, and who intentionally destroyed all records of its investigation.

## II.   Without the FE Allegations, the Amended Complaint Should Be Dismissed For Failure to Plead Scienter

The Amended Complaint should be dismissed because, without the FE allegations, Plaintiffs fail to adequately plead "with particularity facts giving rise to a strong inference" that Defendants acted with scienter. *ECA and Loc. 134 IBEW Joint Pension Tr. of Chi. v. JPMorgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Contrary to Plaintiffs' assertion that "Defendants cannot point to a *single case* granting the extraordinary relief they seek" (Opp. at 2), Defendants cited such a case in their pre-motion conference letter. *See, e.g.*, *City of Livonia Emps.' Ret. Sys. v. The Boeing Co.*, 711 F.3d 754, 760 (7th Cir. 2013) (affirming reconsideration and dismissal of plaintiffs' complaint where "none of the plaintiffs' lawyers had met or talked to [the confidential witness] until six months after they filed the second amended complaint," which "amounted to a fraud on the court").[4]

Here, the crux of Plaintiffs case is whether Defendants knew (and failed to disclose) the **specific contents** of the Double Reduction Regulation ("DRR") before its official release. (*See* ECF No. 49 ("MTD Op.") at 16-17 ("[A]t issue here is not the general anticipation of increased government regulations . . . but rather the 'specific nonpublic information about the forthcoming [DRR's] detrimental impact.'").) In denying Defendants' motion to dismiss, the Court expressly relied on the FE allegations. In fact, putting aside the FE allegations, the only other categories of allegations that Plaintiffs can point to in attempting to allege scienter are: (i) changes to Gaotu's business; and (ii) certain nonparty stock sales. (Opp. at 2-3 (citing MTD Op. at 19-24).) But

---

[3]   The same is true for *Teva* (Opp. at 2), which similarly involved opt-out plaintiffs who copied allegations from the underlying class action as well as from a related state attorney general action. 671 F. Supp. 3d at 191. Plaintiffs also misleadingly quote *Teva* as holding that "Rule 11 does not require counsel to personally conduct the interview" (Opp. at 2), while **omitting the second half of the sentence**, which confirms that Rule 11 "does demand that counsel attempt to confirm the accuracy of the statements that are relied upon." 671 F. Supp. 3d at 194.

[4]   In *City of Livonia*, the court did not strike the confidential witnesses' allegations but gave no weight to the allegations and reversed its prior decision denying defendants' motion to dismiss. Whether the allegations are struck or are disregarded on reconsideration is a distinction without difference.

Honorable Pamela K. Chen
December 5, 2025
Page 4

without Plaintiffs' FE allegations, the business changes and nonparty stock sales do not give rise to the requisite strong inference that Defendants had advanced knowledge of the specific contents of the DRR.[5]

       <u>First</u>, without corroboration from the FEs, Plaintiffs cannot rely on articles about alleged business changes because they too rely on unparticularized anonymized sources. (MTD Op. at 22-24.) "Although a plaintiff may use [news articles] in pleadings, 'the news articles cited still must indicate particularized facts about a defendant's conduct.'" *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 88 (S.D.N.Y. 2011) (alteration in original); *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *23 (S.D.N.Y. Sept. 29, 2014) ("[C]onclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel."). For example, Plaintiffs point to a news report by media company 36Kr84 citing "unidentified sources" discussing an alleged internal meeting about layoffs before the DRR before its official release. (MTD Op. at 22.) Likewise, to support allegations Defendants were informed of the DRR's "spirit" before its official release, Plaintiffs cite a Caixin Media article that purportedly quoted ***an employee*** alleging government officials transmitted the spirit of the regulation to after-school tutoring companies. (*Id.* at 7 (citing AC ¶¶ 92, 94).) The Court found that such news reports "further support the inference of Defendants' scienter." (*Id*. at 22.) However, without the FE allegations, Plaintiffs' "vague description[s] of the source provide[] no basis for the Court to evaluate [their] reliability." *See City of Brockton,* 2014 WL 4832321, at *23. Instead, Plaintiffs' allegations are no more than "repackage[d] [] facts from news sources that cite to anonymized sources" (MTD Op. at 24), which cannot alone support scienter.

       In any event, without the FE allegations, the business changes do not suggest that Defendants knew the DRR's ***specific contents***, but merely that Gaotu, like all market participants, was aware that officials were considering stricter regulations generally. The Court relied on FE 1's allegations that Gaotu purportedly "had been planning a substantial downsizing of its operations" (AC ¶ 135) and that Defendant Chen announced closures of centers the day after the DRR's official release (*id.* ¶ 120) to hold Plaintiffs' allegations were "strongly indicative" of Gaotu's knowledge of the DRR's content before May 28, 2021. (MTD Op. at 23.) The Court reasoned it was "administratively and logistically implausible" for Gaotu to make these swift adjustments. (*Idcity* Without FE 1's corroborating allegations, however, the more compelling inference is that the entire industry received public messaging to "proactively transform their business models" (*id*. at 6) and the Company prudently prepared for industry-wide changes, without knowledge of the DRR's ***specific contents***. Plaintiffs' allegation that "Gaotu [] halted advertising to new students since [Q2 2021]" (*id.* at 22) fails for the same reason. Simply put, Plaintiffs "cannot rely on information generally known or available to the public to support [] circumstantial scienter allegations." *See Glaser*, 772 F. Supp. 2d at 587–88.

       <u>Second</u>, without the FE allegations, Plaintiffs' references to news articles to establish the Irefresh sales as "suspicious" (MTD Op. at 20) also cannot support an inference of scienter. *See Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F. Supp. 3d 515, 546 (S.D.N.Y.

---

[5]   Contrary to Plaintiffs' assertion, these were not "multiple, independent bases" (Opp. at 2) supporting scienter. Rather, the Court held that "all of the facts alleged, taken collectively, g[a]ve rise to a strong inference of scienter." (MTD Op. at 24.)

Honorable Pamela K. Chen
December 5, 2025
Page 5

2020) ("Whether the assertion comes from Plaintiffs or a news article, 'conclusory statements that defendants "were aware" of certain information' . . . cannot support a strong inference of scienter."). Plaintiffs rely on a *Financial Times* article to allege Defendants knew the DRR's contents at the time of the Irefresh sales. (*Id.* at 15.) However, this article only asserts "***one person close*** to [Gaotu] said its leaders were aware at the time of the [Irefresh] trade that Beijing was ***considering stricter regulations***." (*Id.* at 23 (alterations in original).) Even setting aside that the vague description of "one person" provides no basis to evaluate the source's reliability, the article only states individuals at Gaotu were aware of the possibility of stricter regulations, not, once again, the DRR's ***specific contents***. The Court held the Irefresh sales were also "suspicious" because they were "contemporaneous[]" with "cautionary comments about forthcoming regulations." (MTD Op. at 21.) However, without FE 2's allegation that the DRR was "widely known before July 24, 2021," including by Gaotu's "senior management" (AC ¶ 121), the contemporaneous comments and sales are consistent with the more compelling inference Gaotu was merely aware of the possibility of stricter regulations.[6] Even if the Court finds the Irefresh sales were suspicious or unusual—it should not—these sales alone cannot establish scienter because, as the Court acknowledged, "the Complaint does not allege that Defendant Shen or any other Individual Defendant traded any of their own shares or benefitted from Irefresh's trading decision." (MTD Op. at 20.)

At bottom, without the FEs' allegations, Plaintiffs' remaining allegations "taken collectively" do not give rise to a strong inference of scienter, and the Amended Complaint should accordingly be dismissed. (*Id.* at 24.)

Respectfully submitted,

*/s/ Robert A. Fumerton*

Robert A. Fumerton

cc: All Counsel of Record (via ECF)

---

[6] The Irefresh sales on March 9, 2021, also cannot support an inference that Gaotu knew about the DRR's contents because the "Two Sessions" deliberations on the "regulation of the after-school tutoring industry" did not conclude until March 11, 2021. (MTD Op. at 4.) Moreover, the Amended Complaint does not allege a draft of the DRR was available until May 28, 2021. (AC ¶ 98.)