# Levi & Korsinsky

33 Whitehall St., 27th Floor
New York, NY 10004
T: 212-363-7500
F: 212-363-7171
www.zlk.com

Adam Apton
aapton@zlk.com

December 17, 2025

**VIA CM/ECF**
Hon. Pamela K. Chen
U.S. District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    ***Zhang v. Gaotu Techedu Inc. f/k/a GSX Techedu Inc. et al.* (22-cv-7966)**

Dear Judge Chen:

Plaintiffs respectfully submit this letter in response to Defendants' December 5, 2025 supplemental submission in further support of their motion to strike and renewed motion to dismiss ("Defendants' Supplement," ECF No. 77). Defendants' motion should be denied because it attempts to manufacture a requirement—that counsel personally interview confidential witnesses—that is unsupported by any rule, statute, or precedent.

1. **The Court Should Reject Defendants' Non-Existent Personal-Interview Rule: Plaintiffs' China-Based, Supervised, and Corroborated Investigation Fully Complies with Rule 11**

Defendants' effort to create a personal-interview mandate finds no support in Rule 11 or in Second Circuit authority. The Second Circuit has made clear that Rule 11's "reasonable inquiry" requirement is circumstance-dependent, not categorical, and imposes no obligation that counsel personally conduct each witness interview. *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995); *see also Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (Rule 11 sanctions appropriate only where factual assertions are "utterly lacking in support," underscoring a stringent, context-specific evidentiary threshold); *cf.* Fed. R. Civ. P. 11(b) (inquiry must be "reasonable under the circumstances," confirming the rule's case-specific design); *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) ("Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy [.]").

Here, those circumstances strongly support Plaintiffs' Counsel's use of a PRC-based investigator. The confidential witnesses in this case are former Gaotu employees located in China and speak Chinese. Interviewing Chinese-speaking former employees of a Chinese company requires fluency in the relevant dialects, cultural competency, and familiarity with local norms and sensitivities. U.S. counsel cannot reasonably be expected to conduct high-stakes interviews relying on *ad hoc* translation, and Chinese former employees are particularly unlikely to speak directly with U.S. lawyers suing their former employer. In this context, Rule 11's reasonableness requirement is satisfied—and indeed, best served—by retaining and supervising a qualified



investigator on the ground in China. Delegation under these circumstances is not only permissible; it is precisely what a reasonable and competent attorney would do.[1]

Moreover, Plaintiffs' Counsel took substantial measures to ensure the accuracy of the former-employee ("FE") allegations. At the outset, Counsel instructed the investigator regarding which witnesses to locate and what topics to cover. *See* Declaration of Jing Chen ("Chen Decl."), filed herewith, at ¶3. To prevent distortion, Plaintiffs' Counsel required the investigator to prepare contemporaneous memoranda memorializing interviews in a "Q&A" format, including the specific question asked and the FE's verbatim response. *Id.* at ¶4. Further, Plaintiffs' Counsel conducted an extensive review of independent sources to corroborate the FEs' accounts. *See* Complaint (ECF No. 31) ¶¶ 80–123 (identifying more than 20 third-party sources supporting the allegation that Gaotu was aware of the DRR prior to its official publication). Indeed, in sustaining the FE allegations, the Court acknowledged that they were "consistent with the news reports upon which Plaintiffs also rely." MTD Order (ECF No. 49) at 24. Counsel's supervised delegation to a PRC investigator and corroboration through independent sources fully complies with Rule 11.

Defendants' Supplement cites three in-circuit cases in support of their invented rule, but omits a critical distinction: **in each of those cases, counsel copied confidential-witness allegations wholesale from a different complaint filed by different counsel in a different action**, without conducting any of their own investigation. *See In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 3989066, at \*3 (S.D.N.Y. July 31, 2013) ("The only allegations in the amended complaint … are based on confidential witness statements originally recounted in a separate complaint filed by separate counsel in a separate action."); *Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at \*1 (S.D.N.Y. Aug. 19, 2022) (plaintiff "copied almost verbatim" from another complaint); *VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at \*7 (S.D.N.Y. Sept. 16, 2013) (plaintiff improperly relied on CW statements from "a different complaint" without certifying any factual basis). Nothing of the sort occurred here. Plaintiffs' Counsel oversaw an original investigation conducted by a PRC professional investigator, obtained contemporaneous Q&A records, and corroborated FE accounts with more than 20 independent sources.[2]

In the end, Defendants ask this Court to adopt a rule that does not exist: a rule that would override the text of Rule 11, disregard the practical realities of cross-border, foreign-language investigations, and penalize counsel for taking precisely the steps a reasonable and prudent attorney must take when interviewing witnesses in China. Plaintiffs' Counsel conducted a

---

[1] Moreover, forcing attorneys to personally interview every confidential witness would increase advocate-witness risk and encourage tactical disqualification efforts under professional ethics rules. N.Y. Rule of Professional Conduct 3.7 disqualifies a lawyer when the lawyer is likely to be a witness on a significant issue of fact; the rule exists to avoid confusing the fact-finder and protect the integrity of advocacy. Delegation reduces the chance that counsel will become embroiled in credibility disputes about what a witness said during an interview—precisely the kind of advocate-witness entanglement Rule 3.7 seeks to avoid.

[2] Defendants' out-of-circuit citation to *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 181 (N.D. Ill. 2014) is also inapposite. In that case, the investigator **told** plaintiff's counsel that the witness was unreliable, yet counsel proceeded to include the witness's testimony without any effort to corroborate it. Here, Plaintiffs' Counsel had no reason to doubt the reliability of the FEs, especially since Counsel's extensive search of third-party sources backed up the FEs' testimonies.



thorough, supervised, and independently corroborated investigation—exactly what Rule 11 requires "under the circumstances." Defendants' motion to strike and renewed motion to dismiss should therefore be denied in full.

### 2. Discovery Should Proceed

Nor is there any basis to stay discovery pending resolution of Defendants' motion. A discovery stay is an extraordinary remedy and warranted only where a motion presents a clear threshold bar to the litigation. Defendants' motion—premised on a non-existent Rule 11 requirement and attacking allegations the Court has already sustained—does not come close. The motion raises no jurisdictional issue, no immunity question, and no plausibly dispositive legal defect; it simply seeks to re-litigate factual matters already addressed by the Court under the Rule 12(b)(6) standard. Staying discovery will materially prejudice Plaintiffs by prolonging a case that has already survived dismissal and by risking the loss of evidence and witness availability over time—especially given the cross-border nature of key evidence in China. Because the motion lacks substantial merit and does not implicate any recognized ground for halting case progress, discovery should continue without interruption.[3]

### 3. Even Without the FE Allegations, the Complaint Adequately Pleads Scienter

Scienter may be established by (1) motive and opportunity to commit fraud or (2) strong circumstantial evidence of conscious misbehavior or recklessness. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). These prongs are assessed holistically. Defendants contend that striking the FE allegations defeats scienter. Not so. In denying the motion to dismiss, the Court found scienter adequately pled based on three independent factors (MTD Order, ECF No. 49 at 23–26), with the FE allegations serving only as corroboration. Even without any FE statements, the remaining allegations—(i) suspicious insider stock sales and (ii) contemporaneous news reports reflecting officials' transmission of the DRR "spirit" to Gaotu, together with Gaotu's sweeping, DRR-mirroring business pivots—create a strong inference of scienter at least as compelling as any non-culpable inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Defendants' renewed challenge repackages arguments already rejected (*compare* ECF No. 77 with ECF No. 41) and should be denied. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), aff'd sub nom. *Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016) (Local Rule 6.3 is "narrowly" construed to avoid duplicative rulings).

### A. If Only FE3 Is Stricken, Scienter Remains Adequately Pled

Plaintiffs have offered to produce the identities of FE1 and FE2 to Defendants under a U.S. Attorneys' Eyes Only designation to protect against retaliation risks in China. Defendants will be free to test these witnesses in discovery, making a strike unwarranted. The MTD Order treated the

---

[3] In *Wu v. GSX Techedu Inc.*, Magistrate Judge Almonte stayed discovery to allow defendants to file a motion to strike after: (1) Plaintiffs relied on 11 confidential witnesses in the operative complaint but refused to identity any of them, and (2) Plaintiffs did not dispute that without the confidential witness allegations, the complaint fails to state a claim. Here, by contrast, Magistrate Judge Pollak correctly declined Defendants' request for a stay. The Complaint references just three FEs, Plaintiffs have offered to identify two of them, and neither the Complaint nor the Court's MTD Order depends on the FEs to plead scienter.



FEs collectively as corroborative and "consistent with the news reports." (Order at 24). If only FE3 is stricken, FE1 and FE2 remain fully viable, providing particularized evidence of advance DRR knowledge sufficient—and are corroborated by the insider sales, Defendants' access to DRR, and business-change factors—to satisfy the PSLRA. (MTD Order at 23-24.)

### B. Even If All FEs Were Stricken, the Complaint Still Adequately Pleads Scienter

### (i) Opportunity and Motive[4]

The Court independently found the Irefresh stock sale ($140 million, 30% of holdings) "unusual and suspicious" in timing and amount, establishing scienter (MTD Order at 19–22). Defendants recycle their prior argument that the sales "alone cannot establish scienter" because Individual Defendants did not personally trade or benefit (MTD at 21; Defendants' Supplement at 5). The Court has rejected this, noting Defendant Shen's control over Irefresh and the sale's scale and timing (MTD Order 20–21). Courts routinely infer motive from opportune sales alone. *See Ems.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 309 (2d Cir. 2015) (scienter based on personal gains and opportunity); *Acticon AG v. China North East Petroleum Holdings Ltd.*, 615 Fed.Appx. 44, 45 (2d Cir. 2015) (same); *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec., LLC*, No. 01 CIV. 11448 (JGK), 2005 WL 2385854, at *9 (S.D.N.Y. Sept. 26, 2005) (same); *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 303–04 (S.D.N.Y. 2011) (same); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 366-68 (S.D.N.Y. 2003) (finding sale ranging from over ten percent sufficiently unusual and therefore establishing scienter).

Defendants' attack on the corroborative *Financial Times* article—as "conclusory" without FEs—fails. The article links Gaotu executives' awareness of "stricter regulations" to the precise timing of the Irefresh sale, and is independently corroborated by: Gaotu's access to key DRR points and its drastic, contemporaneous business pivots mirroring the DRR during the Class Period. (MTD Order, 20-22). These independent factual allegations include : (i) early involvement in DRR drafting (¶ 82); (ii) high-level meetings conveying DRR directives, such as the Cai Qi meeting (¶90); (iii) transmission of the DRR's "spirit" corroborated by group-chat screenshots mirroring final prohibitions (¶¶92–94); (iv) DRR text leakages from local sites (¶¶98–102); (v) "unusual and suspicious" drastic business pivots, including Defendant Chen's admission of halting of new-student advertising "since the second quarter of 2021" (MTD Order at 22; ¶ 114); (vi) the 30% workforce layoff (¶114); (vii) Defendant Chen's admission of closures of 10 of 15 centers and one-third layoff (¶ 134); (viii) Gaotu's announcements of "newly emphasizing" alternative non-K-9 revenue (MTD Order 22-23; ¶¶115, 117); (ix) amendments to registered business scope (¶116). The Court rejected Defendants' recycled argument that Plaintiffs alleged only "general speculation" or mere awareness of the "possibility of stricter regulations" (Defendants' Supplement at 5; *cf.* MTD at 22). Instead, the Court recognized that Gaotu's proactive measures directly countered DRR restrictions and demonstrated knowledge of the DRR's *specific contents*—all without relying on any FE statements (MTD Order at 22–23). This independent corroboration—from Defendants' own statements, records, and announcements—elevates the article beyond conclusory (MTD Order at 24).

---

[4] It is undisputed that the Individual Defendants had the opportunity to make misrepresentations. MTD Order at 19.



Separately, the Court credited news reports (36Kr and Caixin) reflecting officials' transmission of the DRR "spirit" and Gaotu's mitigation efforts as supporting scienter, independent of FE statements (MTD Order at 22). Defendants' claim that, without FE statements, these reports are conclusory (Defendants' Supplement at 4) ignores the corroboration from Defendants' own admissions and actions summarized above. As the Court held, it would have been "administratively and logistically implausible" to execute such sweeping changes in mere days without advance knowledge (MTD Order at 23; AC ¶135). The reputable sources here (Caixin, 36Kr) add reliability, unlike the uncorroborated generic claims in Defendants' cited cases (*CBS Corp.*, *Glaser*, *Brockton*). At the pleading stage, Plaintiffs need not plead evidence and are entitled to favorable inferences. *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*, 19 F.4th 145, 150 (2d Cir. 2021) (courts "must be careful not to mistake heightened pleading standards for impossible ones"). The Court has already credited these allegations without FE reliance (MTD Order 22-23).

### (ii) Circumstantial Evidence of Conscious Misbehavior or Recklessness

Although the Court did not need to reach recklessness (MTD Order at 25), the Complaint independently alleges strong circumstantial evidence that Defendants "knew facts or had access to information suggesting that their public statements were not accurate." *Ems.' Ret. Sys. of Government of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015). These allegations include: consultation channel with regulators (¶105), DRR drafting involvement (¶ 82), Cai Qi meeting (¶90), DRR "spirit" transmission corroborated by screenshots (¶¶92–94), drastic changes (¶¶114–17, 123–35), text leakages (¶¶98–102), and repeated assurances of regulatory knowledge to analysts (¶ 164). *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d. Cir. 2001) (actions contrary to public statement "can form the basis for proof of recklessness"); *Christine Asia Co. Ltd. v. Ma*, 718 Fed.Appx. 20, 23 (2d Cir. 2017) (scienter where executives met with government officials and discussed relevant information); *Karimi v. Deutsche Bank AG*, 607 F.Supp.3d 381, 397–98 (S.D.N.Y., 2022) ("[W]arnings from" regulators are "widely recognized to be evidence of scienter."); *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 Fed.Appx. 10, 14 (2d Cir. 2011) (scienter where issue was one "about which investors and analysts often inquired").

With K-9 tutoring comprising 80% of revenue (¶44), recklessness is further inferred under core operations. *See Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *10 (S.D.N.Y., 2020) (statements concerned "the sin[e] qua non" of company's success); *In re Avon Securities Litigation*, 2019 WL 6115349, at *20 (S.D.N.Y. 2019) ("absurd to suggest" that senior management was unaware of a widespread problem in the largest market); *In re General Elec. Co. Securities Litigation*, 857 F.Supp.2d 367, 396 (S.D.N.Y. 2012) (core operations based on 50% of revenues).

Viewed holistically, these factors create a "cogent and compelling" inference of scienter. *Tellabs*, 551 U.S. at 324; Order at 24. Defendants' piecemeal attack fails to undermine it. As such, even without the FEs, the Complaint adequately pleads scienter. MTD Order at 24.

Respectfully submitted,

*/s/ Adam Apton*
Adam M. Apton

Encls.

cc:    All counsel of record (via CM/ECF)