1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X
                                  :
TCP DIVERSIFIED TECHNOLOGY        :  22-CV-07966 (PKC)
FUND, ET AL.,                     :
                                  :
                 Plaintiffs,      :  United States Courthouse
                                  :  Brooklyn, New York
        -against-                 :
                                  :
                                  :  December 22, 2025
GAOTU TECHEDU INC.,               :  4:00 p.m.
                                  :
                 Defendant.       :

- - - - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
BEFORE THE HONORABLE PAMELA K. CHEN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S :

For the Plaintiff:        LEVI & KORSINSKY, LLP
                          33 Whitehall Street, 27th Floor
                          New York, New York 10004
                          BY:  ADAM APTON, ESQ.

                          THE ROSEN FIRM, PA
                          275 Madison Avenue, 40th Floor
                          New York, New York 10016
                          BY:  JING CHEN, ESQ.
                               YU SHI, ESQ.

For the Defendant:        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP
                          One Manhattan West
                          New York, New York 10001
                          BY:  JUDITH FLUMENBAUM, ESQ
                               MICHAEL CHARLES GRIFFIN, ESQ.
                               ROBERT ALEXANDER FUMERTON, ESQ.

Court Reporter:
Jamie Ann Stanton, RMR, CRR, RPR
Official Court Reporter
(718) 613-2274
JamieStanton.edny@gmail.com

Proceedings recorded by computerized stenography.  Transcript produced by
Computer-aided Transcription.
                *     *     *     *     *

PROCEEDINGS                          2

(In open court.)

THE LAW CLERK:  Civil cause for oral argument on motion to strike and renewed motion to dismiss, TCP *Diversified Technology Fund, et al. versus Gaotu Techedu Inc., et al.*, docket number 22-CV-7966.

Will the parties please state their appearances for the record, starting with plaintiff.

MR. APTON:  Good afternoon, Your Honor.

Adam Apton of Levi & Korsinsky for lead counsel.

THE COURT:  Good afternoon.

MR. APTON:  And with me is my colleagues at the Rosen Law Firm, Yu Shi and Jing Chen.

THE COURT:  Sorry, I cut you off.  Good afternoon.

MR. GRIFFIN:  Good afternoon, Your Honor.

Michael Griffin, Robert Fumerton from Skadden Arps for the defendants.

THE COURT:  Good afternoon to you.

MR. FUMERTON:  Good afternoon, Your Honor.

THE COURT:  Did you mention the other two people who are online, I'm sorry, Mr. Apton?

MR. APTON:  Yes, Your Honor.  My colleagues at the Rosen Law Firm, Yu Shi and Jing Chen.

THE COURT:  And Mr. Griffin, you are here from Skadden, correct?

MR. GRIFFIN:  Correct.

PROCEEDINGS 3

THE COURT:  Sorry about the delay, folks, in getting started.  We were having a little bit of technical issues.  This is a pre-motion conference on the renewed motion to dismiss and motion to strike of the defendants.

As everyone knows, there was a prior motion to dismiss that I did deny back in February of this year.

I want to talk to the parties because I've construed the pre-motion submissions as a renewed motion, as I mentioned a moment ago, to dismiss the complaint.

I guess the first thing I want to do is to make sure and confirm with the parties that the defendant's motion -- this is not a Rule 12 motion to strike, but rather it seems to be and both sides seem to be treating it as a Rule 11 motion regarding plaintiffs' counsels' obligations under Rule 11 to -- and this is just my summary of it -- confirm the information provided by the yet unidentified former employees of Gaotu, G-A-O-T-U.  And I will just shorten it that way for ease of our discussion.

Am I correct about that, Mr. Apton?

MR. APTON:  I'm sorry, Your Honor --

THE COURT:  Mr. Griffin, I'm sorry, Mr. Griffin. I'm sorry, Mr. Griffin, sorry, not Mr.  Apton.

MR. GRIFFIN:  Thank you, Your Honor.

I would phrase it slightly differently.  While the motion arises out of plaintiff's obligations under Rule 11,

PROCEEDINGS                                          4

we are not at this time seeking sanctions against counsel for violating Rule 11.  So it is certainly connected with the motion as Your Honor noted, but at this time we are not seeking sanctions against plaintiff's counsel under Rule 11. That's something that Your Honor will obviously have to consider upon a final adjudication under the PSLRA, it's mandatory to assess whether all counsel have complied with their Rule 11 obligations, but we're not at that stage today.

THE COURT:  Okay, but what about a Rule 12(f) motion to strike?  Is it proper to consider your motion that, or is it really that based on the, what you are alleging, is a failure to confirm the veracity, the reliability of the statements or information provided by these former employees, that the motion should be dismissed because it's not -- or rather, it's insufficient with respect to scienter intent.

MR. GRIFFIN:  That's correct, Your Honor.  We do think it is properly construed under Rule 12(f), as these allegations are immaterial due to the fact that plaintiffs had no basis for them at the time they filed the Amended Complaint and apparently do not intend to prove them now as the case proceeds to the merits.  So under that definition, we believe they are immaterial within the meaning of Rule 12(f).  And as I am sure Your Honor's looked at the cases

PROCEEDINGS                                                    5

that both parties have cited and they arise in a variety of procedural postures.  Some courts deal with this issue at the motion to dismiss stage and simply disregard allegations like this and then rule on the motion.  Some have addressed them in the motion to strike stage after the fact.  Some have addressed them on a motion to reconsideration without an express motion to strike or disregard, just saying that in light of facts that have come out after the motion to dismiss, they want to reconsider that holding.  So the cases are all over the place in terms of the procedural posture that they arise in.  But we do think that this fits within the rubric of immaterial allegations that may be stricken under Rule 12(f).

THE COURT:  It's curious, because as you note, you've both cited caselaw, but it's mostly Rule 11 caselaw and I thought the argument really was that plaintiffs' counsel hadn't fulfilled its obligation -- and you even argued -- to actually interview these individuals themselves or at least confirm the veracity of the information they've provided.  And you went so far as to cite a number of cases under Rule 11 where plaintiffs' counsel has relied on other complaints and therefore really has no basis or independent basis to confirm the veracity of the information provided.

Now, I think those are distinguishable, but I am only pointing this out because it seems to me both sides

have been arguing Rule 11 is the standard, Rule 11(c), in particular, is the standard governing why these allegations that you are now saying are immaterial under 12(f) should be stricken.  I thought your argument really was more that plaintiffs' counsel hadn't done sufficient diligence as required by a Rule 11 in order to include them and therefore they should be disregarded for purposes of deciding the sufficiency of the complaint.  And I think you further argue that the insufficiency of these allegations or the failure on plaintiffs' counsels' part is compounded or is also manifested by their refusal to identify all three of these former employees.  I thought that was also part of your argument.

MR. GRIFFIN:  Your Honor, I agree with everything you just said the way you framed it.  So if you were hearing me say something different, then perhaps I was not being clear, because I agree with the way Your Honor just framed the issue.  The underlying obligation here arises out of Rule 11.  There is no question about that.

THE COURT:  Okay.

MR. GRIFFIN:  I think, for example, the *City of Livonia* case procedurally kind of gives an example of this. There, the Court decided to disregard the confidential witness allegations because they had not been verified by counsel.  They dismissed the case.  The case went up on

PROCEEDINGS                                          7

appeal, cross appeals from both sides.  Plaintiffs wanted to reverse the dismissal and defendants wanted sanctions under Rule 11 at that stage.  And the Seventh Circuit affirmed the dismissal and remanded for a determination of Rule 11 sanctions even though the Court had already disregarded the allegation, had already dismissed the complaint.  The Rule 11 issue then came back separately on the sanctions piece.  And that's what the Northern District of Illinois decided in the case that we cited as well.  They were just ruling on whether Rule 11 sanctions were appropriate after having already decided to disregard the allegations for plaintiff's failure to verify them at the outset.

So there are -- like I said, they are -- I think they are two distinct issues, whether plaintiffs complied with the Rule 11 obligation such that they could rely on those allegations at the pleading stage, and then, separate and apart from that, whether that failure warrants sanctions.  And we are not dealing with the second piece today; only the first one.

THE COURT:  Well, let me say this about the sanction issue and how Rule 11 normally operates.  I think, and I think you alluded to this, the PSLRA, just to use the acronym, does seem to undermine the application of 11(c) with respect to sanctions.  Obviously, as you know, under Rule 11, there is a certain procedure that has to be

PROCEEDINGS                                          8

followed, an opportunity to cure or withdraw the offending document, et cetera, the Safe Harbor provision, but it seems to me the caselaw makes clear that the PSLRA upends that and basically nullifies that.

So I wasn't thinking in those terms. I was just trying to understand what you seem to be arguing and what the plaintiff seems to be construing your argument as. And it does seem to me, just as you said now and as I said earlier, an argument that because of the failure to confirm the veracity of these statements by the former employees, that I understand were gathered by a private investigator for or at plaintiff's behest, that they should be stricken from the complaint and then the complaint is insufficient without them to satisfy the intend or scienter requirement.

So I guess the one thing I want to -- now, just focusing on that issue, I have to be honest with you, I think the plaintiff makes or has allegations in here -- sorry, makes arguments, counter-arguments, that I think convinced me that I don't think the Rule 11-ish, we'll call it, argument, really is sufficient or persuasive. You cite the Seventh Circuit case, but I think there's caselaw in this circuit that makes clear that the plaintiffs' counsel doesn't have to actually be at the interview that's relied upon. And then the question becomes: Did they at least do enough due diligence by the time the complaint is filed to

ensure that the allegations are reliable or are sufficiently reliable for purposes of Rule 11.

And here, I think that the plaintiff makes a good argument about why.  They basically say that a lot of these allegations from FE, or Former Employee 1 through 3 are corroborated by other independent evidence.  So for example, the first former employee's allegations of a July 25, 2021, meeting to dissolve eleven centers is confirmed by a later interview by defendant Chen, and that's in the Amended Complaint at paragraphs 120 and 135.  And then the former employee identified as number two, their allegations -- or that person's allegations of massive layoffs in May is responsive to DRR is corroborated by an article that 36Kr article, and that's in paragraphs 114 and 121 of the Amended Complaint.  And then the former employee identified as number three, that person's allegation is that the full version of the DRR had been disseminated as of mid-July 2021, that's the allegation, is corroborated by similar leaks, and that's set forth in paragraphs 90 to 102 and 122 of the Amended Complaint.

So it does seem to me that this case is distinguishable certainly from the ones you rely on in your letter which, as I said before, arose out of situations where the plaintiffs, the plaintiffs' counsel relied on other complaints without confirming the veracity of the

allegations, the factual allegations contained therein.

I understand that obviously these are former employees who have yet to be identified, but -- or disclosed, I should say, but here the plaintiffs didn't rely on other complaints or other people's allegations without confirming the reliability of those, but they got a private investigator or relied on a private investigator who obtained the information and that information was corroborated by other sources.

So it seems to me we are in a markedly different situation. I don't see any reason I would strike these allegations. Now, we can pick up the second issue that you raised about plaintiff not disclosing those individuals, but I understand that they've offered to disclose two of the three of those individuals so long as that there is some heightened or strengthened protective order for those individuals, which I understand given the circumstances as alleged here, relating to potential retaliation against them.

So I just don't -- I mean, I understand your argument and it certainly has potential merit, but I just don't happen to agree with it under the circumstances of this case. I don't think that the plaintiffs or their counsel violated Rule 11 in terms of confirming the reliability or veracity of the allegations that they relied

on.  Obviously, it's possible they could be wrong about them or the allegations may not prove to be true, but this is not a situation where there is a real concern that somehow they'll have to withdraw their complaint because these allegations turn out to be either false or the individuals aren't willing -- the sources, that is, aren't willing to testify about them.

Now, that having been said, I do want to ask you, Mr. Apton, whether or not you know if these three anonymous sources were told that their allegations were going to be used in a complaint or at some point that their identities would have to be disclosed at least to the lawyers for purposes of the litigation and that they would potentially have to testify.

Do you know what kind of representations were made to them?

MR. APTON:  Your Honor, because I wasn't on the call personally, I can't say definitively one way or the other.  However, I can say that is our standard practice to advise confidential witnesses in every investigation that their information will be used in a U.S. legal proceeding and that they may have to testify at some point in the future.

THE COURT:  All right.  And you say your standard practice.  You mean when you are speaking directly to the

PROCEEDINGS                                    12

potential witnesses?

MR. APTON:  When we, the attorneys, or the investigators we retain.

THE COURT:  And this is a company, I understand, that you've worked with before or at least have vetted in some way in terms of their --

MR. APTON:  Yes.

THE COURT:  Okay.

MR. APTON:  Yes, Your Honor.  My firm individually as well as the Rosen Law Firm as well.

THE COURT:  Okay.

So let me hear from you, Mr. Griffin.  I mean, I think you and I just simply disagree.  I understand what the caselaw is.  I understand what the standards are.  But I happen to think this is a situation where I would not find, and I don't feel I can find, that plaintiffs have not done enough diligence or have relied on facts that on their face or that, rather, they didn't reasonably rely on the information that they put in the Complaint for the reasons that I said.  That there's, one, a company or a firm that they work with that obtain the information.  Obviously it's not crystal clear what the witnesses were told, but it does seem to be consistent with the plaintiffs' counsels' practice, and they have worked with this investigative group before, to at least advise the individual that their

information was going to be used to bring a lawsuit which could have consequences for them in terms of having to eventually testify.

But like I said, on the complaint itself does contain corroboration of the specific statements made or information provided by the three former employees from third-party independent sources that are -- some of which is publicly available and I think satisfies me, at least, that plaintiffs had sufficient other information upon which that could corroborate and upon which they could rely in including these allegations and proceeding as they have.

Did you want to add anything?  I know that you and I, obviously, are disagreeing on this point.

MR. GRIFFIN:  Yes, Your Honor, a few points.

First, I think your exchange with Mr. Apton right now highlights the exact problem here, right?  I mean, you asked a very simple question:  Were these witnesses told that they're going to be involved in U.S. litigation, and he can't answer that because he wasn't on the call, as he said. That is precisely the problem here.  We don't know, we will never know what these witnesses were told or exactly what they said in response.  If counsel had just interviewed them, themselves, that would obviate this issue.

Now, look, we don't dispute that plaintiffs are allowed to use an investigator to find potential former

PROCEEDINGS                                    14

employees and to even do screener interviews of them.  The issue becomes, the Rule 11 issue arises when they then want to include those statements in a Complaint.  That's where counsel needs to step up and actually pick up the phone or go visit and speak to the witness and confirm that what their investigator has reported is accurate; that the witness understood what they were being asked and why; and that they are okay with joining a U.S. litigation.  And frankly, we just don't know if that happened here because counsel wasn't involved.  I have no doubt that if counsel did the interview himself, he would have made all of those points, but we'll simply never know in this case because they outsourced it entirely to an investigator.

And to Mr. Apton's point, he didn't submit the declaration here for supervising the investigator.  So whatever he does, whatever he does in his regular practice, that's not the individual that they put forward that said did the supervision here.  It was Ms. Chen, Jing Chen from The Rosen Law Firm.  But she wasn't on the calls either, so we are going to have the same problem.

I would also like to say two things in response to your initial comments about the Rule 11 issue more broadly.

First, plaintiffs -- I agree with you that the cases where plaintiffs copy allegations from other complaints, that's a bit of different bucket and a lot of

the cases fall into that bucket and that's obviously not what we are dealing with here.  But they don't cite a single case, not one, endorsing what they've done here, which is relying wholesale on a private investigator without even knowing who these people are or making any attempt to speak with them.  They don't cite a single case in that posture.

We cite two that disallowed that:  *Millennial Media* and *City of Livonia*.

THE COURT:  Let me stop you on *City of Livonia.* Isn't the distinction, though, in that case that the investigator, him or herself, acknowledged that that person -- that she couldn't verify what they had been told? Wasn't that the problem?  Not that the lawyers hadn't verified it, but the investigator, him or herself, couldn't verify what had been told.  Whereas here, like I said, there is some corroboration for what these individuals said that was material.

And with respect to *Millennial Media*, that was largely *indicta* in that case.  And even there, though, I think the Court didn't go quite as far.  The facts at least are different enough that I don't think it's binding or at least even that relevant.

So the two cases that you are relying on I don't think dictate certainly the result you are arguing for because I think it's a question of just going forward at

some point.  If, in fact, plaintiff can't -- I mean, the question is at this stage should I shut it down because there isn't enough to believe or from which I can infer that these are reliable allegations.  And that I cannot find, I would say, based on what's in the Complaint itself and based on the efforts of the private investigator or the reliance on a private investigator.  Whether or not these individuals will eventually be able to come forward and be deposed or whatever the process is decided upon for discovery is a separate issue.  I don't think it's a Rule 11 issue, though. I don't think it rises to that level.  And I don't think either *Millennial Media* or *Livonia* convinced me otherwise.

MR. GRIFFIN:  And that's fair, Your Honor.  These cases obviously are not binding on Your Honor and they are just other District Court decisions.  We believe that they are persuasive.  You are right, the investigator did raise red flags in *City of Livonia*, but the failure to speak to the witness alone was sufficient in that case.

And I am quoting from page 181 of the decision, quote:  Plaintiffs' counsel's failure to interview Singh before filing their securities fraud complaint constitutes a failure to conduct a reasonable pre-file investigation as required by the PSLRA, end quote.

So you are right, there were other circumstances there, but this issue alone was sufficient there to violate

the pre-filing investigation requirement.

And *Millennial Media* was similar.  And you are right that decision was largely *indicta* because plaintiffs voluntarily dismissed their complaint there after this issue came to right.  So Judge Engelmayer didn't even have an opportunity to rule on a motion to strike or a motion to dismiss there because plaintiffs dropped the case.  But I did still that Judge Engelmayer's rationale there is persuasive and his reasoning throughout that opinion -- it's a very lengthy, very thorough opinion where he lays out why this is the way that things should be conducted.  And many of the cases have picked up on that language, including many of the cases that plaintiffs' counsel cites.

But setting aside the legal question --

Sorry, did Your Honor have a question?

THE COURT:  No.  Actually, I had a question for Mr. Apton.

I was under the impression that plaintiffs actually did attempt to speak to or confirm the information here with some of the former employees, but Mr. Apton or his team; is that correct or incorrect?

MR. APTON:  Your Honor, because of the language issues and, you know, being that I don't speak Chinese and the witnesses speak only Chinese, we communicated through the investigator.  So for example, if there was a

clarification needed or follow-up questions, that was transmitted through our investigator.

THE COURT:  Okay.

So Mr. Griffin, go ahead.  The one thing, though, I want you to, I guess, understand is that I think I am more persuaded -- not that Judge Engelmayer isn't a terrific Judge, of course, he is, but I am persuaded by another Southern District of New York case, *Homeward Residential Inc. versus Sand Canyon Corp.*, which is recorded at 2014 Westlaw 2510809.  And that's from May 28, 2014, specifically.

And there, the judge is quoting from the federal rule itself, 11(b)(3).  And it says, Rule 11 is that specific and requires only that an attorney make an inquiry reasonable under the circumstances including that the factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

And I think that's -- it's a reasonableness standard, I think, or a reasonable inference standard.  And like I said, I find that that's met here because the allegations are corroborated by other external facts that there doesn't seem to be any dispute about.

And what I hear or perceive from your motion is you are really not disputing that there are some reasons to

PROCEEDINGS                                                    19

not believe any of the former employees' allegations or statements, but, rather, you are taking issue with how they were procured or whether or not plaintiffs' counsel did further diligence.  It seems to me form over substance here because I don't hear you saying that there is some reason really to doubt the veracity of these allegations which, like I said, were corroborated by at least three other data points that had nothing to do with what these individuals said.

MR. GRIFFIN:  Yes, Your Honor.  And it's both a form issue and a substance issue.  Form issue on the process is an issue here.  And we completely agree it's a reasonableness test, what's reasonable under the circumstances.  And we think it was reasonable under the circumstances here for plaintiffs' counsel to speak to these witnesses.  Mr. Adams cited the fact that he doesn't speak Chinese, that's fair.  Ms. Chen, who submitted the declaration and actually supervised of the investigator, does speak Chinese.  And she touts in paragraph six of her declaration the extensive Chinese language research that she did.  There is no reason why she couldn't have spoken to these three witnesses in their native language.

Now, they also point out that Chinese former employees may be unwilling to speak to U.S. lawyers.  They made that argument in their supplemental opposition.  That

goes back to the point Your Honor raised earlier, which is did they even know with whom they were speaking and why. If they knew this was for U.S. litigation, why would it matter if they were talking to a PRC investigator or a U.S. lawyer? And if this information was obtained under some false pretenses -- and we don't know if it was because we don't know what was said -- that's certainly an issue.

That comment that they're unlikely to speak to U.S. lawyers also goes to the second point which is whether counsel ever actually had any intent of proving these allegations. It suggests that counsel never intended to speak to these three witness; never intended to call them to testify; never intended for them to be deposed. Rather the plan all along was to use them to survive the motion to dismiss and then drop them. And that's what they can't do. They can't use these as a sword and a shield to sneak past the motion to dismiss and then completely run away from these three witnesses. There is no indication here that they ever had any intention of relying on them to actually prove their case, because as soon as we asked for their names, they said we don't know. They didn't object to producing them, they just said we don't have them. And this goes to Your Honor's point about whether they are actually going to have a basis for these allegations.

THE COURT: But maybe I missed something.

PROCEEDINGS                                      21

Didn't -- I read that the plaintiffs are willing to disclose two of the three names, but provided there is a more robust protective order, an Attorneys' Eyes Only protective order.

Is that incorrect, Mr. Apton?

MR. APTON:  Your Honor, no, it's not.

I feel like we are starting to go in circles here. We are -- we do have two of the names.  We've made their names -- we are ready to produce them.  We just need those heightened confidentiality designations, which we didn't think wouldn't be an objectionable issue, but it appears to have become a sticking point unfortunately.

So we are looking to get through that issue and then move into discovery to really get into the issues of the case.  These confidential witnesses, as Your Honor has, I think, suggested, is not the meat and potatoes of this case.  I mean, if anything, it's the tail of the dog.  There are many other allegations that we have relied on to support the crux of our theory of liability.  So that's where we are at.  But yes, we are ready, willing and able to make those names available.

MR. GRIFFIN:  And Your Honor, we think that that offer is completely illusory.  They've offered to produce -- first it's only two of the three names.  They still don't know today who that third confidential witness is.  The reason they don't know it is because their investigator

destroyed all of his records which is another risk of outsourcing this process entirely to an investigator rather than counsel.

But even setting that aside, their offer is not to produce an Attorneys' Eyes Only, which would be objectionable, but even to U.S. Attorneys' Eyes Only. The whole point of this process is so that we can test the veracity of the allegations. We can try to investigate them, we can see if these people even worked at the company, did they have an ax to grind, were they even at the meetings they claimed they were at, et cetera, et cetera. We can't even confirm that these people worked for Gaotu if we can't tell Gaotu who they are. And that's what plaintiffs are insisting on. U.S. Attorneys' Eyes Only. Frankly, there's not much for me, the U.S. attorney, to do where these names if I'm the only one who can see them.

THE COURT: Well, listen, I am going to further ruin your day, Mr. Griffin, by telling you that even if I were to strike these allegations, as I said before, I think the Complaint would survive dismissal. Because -- and we obviously have been here before. I wrote a decision in which I explained that I think the allegations in the Complaint relating to the sale itself meets the standard set forth in *In Re: Scholastic Corp. Security Litigation,* and that is a Second Circuit case, as everyone knows, from 2001.

And I thought it was enough to qualify as an unusual insider sale that creates an inference of impropriety. And I could recount or recite again those factors, but everyone obviously knows them.

What I did focus on before and I'll reiterate is there certainly was a huge profit from the sale, 137 million-plus, 30 percent of the stockholdings were sold by the alleged insiders, and the volume change was substantial because prior to that, Gaotu had only filed one Form 144 to sell its shares between 2019 and 2023, so during a four-year period, and that the sales occurred before the corrective disclosure was made. So as everyone knows, as alleged in the Complaint, the same day the sale forms were finalized, Gaotu told Deutsche Bank that it was expecting sales to decrease and Gaotu only filed its risk disclosures on April 26th, after the sale.

And so I had previously said, and I don't think at this point there is any basis to reconsider that, I haven't heard or seen any, that that in itself, those allegations in themselves, even if we removed all the anonymous allegations, would be enough to survive dismissal. So we could argue about this further, but I don't find there to be any reason to strike the allegations, if this were a Rule 12(f) motion. I don't find that there's any violation of Rule 11 with respect to the diligence that plaintiffs'

PROCEEDINGS                                    24

counsel has applied in terms of the anonymously-received information.  I say anonymous because it's from individuals whose names have yet to be disclosed during the litigation.  And, therefore, I would find even the allegations without the anonymous allegations to be sufficient to go forward.

Now, there may well be some discovery issues that have to get worked out.  I know that Judge Pollak has already been asked to take certain action with respect to the disclosure of the former employees who thus far have remained anonymous.  But that's a discovery issue and perhaps it will end up that a summary judgment motion will have to be filed saying that the plaintiff doesn't have enough based on the undisputed facts to survive that motion or to go to trial and that no reasonable jury could find in their favor.

But at this point I am not going to dismiss the Complaint and I am not going to strike the allegations based on the yet-undisclosed or unidentified former employees.

I do think the parties should move forward to get whatever information defense counsel are entitled to.  I do think, although it's obviously going to be Judge Pollak's call in the first instance, that there should be a strong protective order.  I do understand the concern that plaintiff and their sources have with respect to potential retaliation against them if, in fact, they are speaking out

PROCEEDINGS                                          25

against some government information or action, I should say.

I am curious, though, Mr. Apton, or your team, is it correct that you actually don't know who the third -- or one of these former employees is?

MR. APTON: Your Honor, as we sit right here, right now, we do not know FE 3's identity with certainty. We are trying to confirm it. We served an interrogatory on defendants for a list of employees that we believe is relatively small. With that information, assuming we get a response, we're hoping we will be able to get the confirmation we need from our investigators, and then we can produce that former employee name as well.

That --

THE COURT: Can -- go ahead, please.

MR. APTON: I was going to say that, though, is tied up right now in a motion for a protective order. Defendants moved for a protective order; we are waiting for a decision on it.

THE COURT: And the destruction of the notes, I gather that's undisputed and I apologize if it was somewhere in your submissions. What is the reason? Was the investigator concerned about them being discovered in the trial?

MR. APTON: Sorry, Your Honor.

There were a number of high-profile raids where

due diligence firms like our investigator were raided with varying penalties and so to protect sources and employees, the investigator did what he or she did and we have been dealing with that since.

THE COURT:  I do have to note, and obviously I am stating the obvious to you, folks, that this case does present unusual and difficult circumstances for plaintiffs in terms of being able to obtain information and then secure the cooperation of potential witnesses.  I certainly understand the difficulties they are facing given the nature of this case and who the various actors are.  So I think a case such as this deserves some special solicitude in a way. And although I am not saying that much is required here because as I said, I think the Complaint itself satisfies at least most of the factors in a way that supports letting the case go forward because of the unusual insider -- allegedly -- alleged insider sale.  And I also think that the anonymous, at the moment, yet-anonymous statements should remain in the Complaint.  I think that plaintiffs are attempting to do everything they can within -- or given the difficulties that they are facing.  And I think they have done a reasonable job of trying to confirm and work with their private investigator to confirm the information that they're getting.

As you point out, though, Mr. Griffin, they did

not seek to speak directly to the sources, but they did, as they mentioned, participate actively in trying to get information by communicating with the private investigators about follow-up questions.  And I think that there are reasonable restrictions on their ability to speak directly or that there are understandable or unsurprising restrictions on their ability to communicate directly with the sources whom I imagine are concerned about speaking to many different individuals with respect to the information they are providing.

So I don't fault the plaintiffs' counsel for that, nor do I think it diminishes either their efforts or their reliability of the information they've gathered thus far from these three former employees for purposes of proceeding with this case.

MR. GRIFFIN:  Your Honor?

THE COURT:  Go ahead.  Mr. Griffin, go ahead.

MR. GRIFFIN:  Can I just make one point on the stock sales?  Your Honor has mentioned it several times and obviously it was a big -- a big part of your original decision.

The one point I would like to highlight that you did not address previously is the timing here.  These sales -- there was only one sale.  The sale was on March 9th.  That was just four days after the March 5th

alleged misstatement that Your Honor dismissed, dismissed precisely because there's no allegation supporting an inference of advanced knowledge at that early stage. Remember, the ban wasn't even privately enacted until May and wasn't public until July.  We are talking about March. Plaintiffs initially pled a misrep on March 5th which Your Honor dismissed.  Sales are four days later.  Nothing significantly happened in those four days.  And this sale is seven weeks before the first remaining misrepresentation which, as Your Honor noted, is in April.  It's black letter securities law that insider trades before the alleged fraud do not support scienter, right?  That's incoherent as a theory of fraud, that they unloaded this stuff before they made the alleged misstatements that inflated the stock.

Now, we didn't raise this issue in our motion to dismiss because at the time they had this March 5th misrepresentation.  This sale was in the middle of the class period.  But Your Honor dismissed that.  And as it currently stands, this sale is seven weeks before the class period began, seven weeks before the first alleged misrep, months before the regulation is actually enacted.

And so we would submit based on the timing alone, even not disputing all the other points Your Honor made about the sale, it cannot support scienter, and it certainly cannot support scienter standing alone here.  And that's not

an issue that Your Honor has had an opportunity to address previously.

THE COURT:  But you didn't -- I mean, in part, I guess, because you didn't raise it before, although I do think you had challenged, obviously, the March 5th, 2021 statement, right?

MR. GRIFFIN:  Yes.

THE COURT:  And I then ended up, I guess, agreeing with you.  I'm trying to sort of piece the history together.  Right, so you did have an opportunity to then make the further argument that somehow then if, in fact, the March 5th, 2021 statement wasn't false or fraudulent, then the sale, then -- or this factor about relating to the timing of the sale would not weigh in favor of a finding of potential misrepresentation and fraud, right?  I mean, sorry, wouldn't support this --

MR. GRIFFIN:  Theoretically, we could have done that, Your Honor.  We didn't anticipate a piecemeal decision on the three alleged misreps.  They occurred at three different points in time.  We made the same argument for all three, that the allegations don't support an inference of advanced knowledge at any of those three points in time.

Now, Your Honor happened to agree with us on one and not the latter two, but that's the reason we didn't make, you know, well, if you kick out the first one, then we

have this backup argument on the stock sale.  And if you take out the second one, then we have -- you know, we didn't read it that way given the limitations of the briefing and what the case looked like at that stage.

But the case looks very different now.  And we think in a dispositive way that if you get rid of the former employees -- and Your Honor noted that the former employee allegations are consistent with some of the other public news articles, et cetera, but I think the nuance here is not about the events that happened, but about the why and about the knowledge.  There is no dispute that the company laid off a bunch of employees around this time.  That was reported publicly.  It was admitted by the company.  It's what some of the employees allege, right, the meeting. There is no dispute that, you know, there were versions of the regulation that may have been leaked on certain social media.  The key piece that the former employees add is that insiders were aware of those things and that they made the decision to lay off people knowing that there was going to be this ban coming.  And that's the piece here.  As Your Honor noted, that is the thing that plaintiffs allege. That's what this whole case turns on.  Not this generalized worry, you know, about impending regulations.  And I actually quote it here, because I think Your Honor put it just right.  This is at 16 to 17 of your decision.

Quote:  At issue here is not the general anticipation of increased government regulations and a corresponding downturn in the market; but, rather, the specific nonpublic information about the forthcoming DRR's detrimental impact.  End quote.

And that was exactly right.  It's not about this general awareness that something bad was coming down the pike from the regulators.  It was:  Did the defendants know of the specific ban that was ultimately enacted.  And using the former employees, the only alleged insiders, to connect the dots between these general things that everyone knew about, you know, the business changes, expanding into other areas, laying off workers, and the reason why the basis on which those decisions were made internally.  That's why if you get rid of the former employees, you lose that connection, and all you are left with is the facts of these changes, which more consistent than just a general hedging against what might be coming, right?  They don't indicate any specific knowledge of a ban.  In fact, if the company knew of a ban, why would they only layoff 30 percent of their workers?  Why would Irefresh only sell 30 percent of its stock?  If they knew that this whole industry was going to be outlawed, they would have torched everything.

So if you remove -- it really is a critical piece of Your Honor's decision because Your Honor considered all

this holistically.

And going back to the stock sales, having dismissed the misreps on March 5th, I just don't see how the March 9th stock sale can indicate any advanced knowledge. It was so early in the timeline here.  It's months before the class period, before the first alleged fraud started, and long before this ban was even privately enacted by the government.  I mean, Your Honor actually stated in describing the sale that it was made, quote, while the parliamentary deliberations on the DRR were still ongoing, end quote.  That's at page 5 of your decision.

And that's exactly right.  That sale can't possibly support an inference that defendants already knew about the regulation when the government hadn't even decided to enact it yet.  And that is the link that that's what they have to show, that knew about the ban.

MR. APTON:  Your Honor, if I may?

THE COURT:  Yes.

MR. APTON:  I don't want to engage in an argument on what seems to becoming an motion for reconsideration at this point, but I do want to point out that Mr. Griffin's presentation of the stock sale, though, was not entirely correct.  The March 9th sale did occur during the two sessions meeting, which is when we do allege is when the directive came out initially.  And that's when we allege

that DRR was made known to certain members within the Government and educational institutions.

THE COURT:  My point was going to be a little simpler, which is that the factors that are laid out in the *Scholastic* case, none of them are dispositive.  These are things obviously that the Court should consider and there are numerous, six or so, of these factors.

So you are correct, Mr. Griffin, that I found that the March 5th statement wasn't fraudulent, or at least it wasn't sufficiently alleged to be fraudulent, but that doesn't mean that it's impossible then or that the inference that the sale itself was somehow improper is completely undone, because there were a number of other factors.  And so the test obviously says for the Court to consider -- to determine if the sale is unusual, the profit from the sales, the portion of the stockholdings sold, the change in the volume.  So all three of those, as I said, were indicative of an unusual stock sale.  The number of insiders selling, whether sales occurred soon after statements defendants are alleged to know to be misleading.  And that's your point, which is that the March 5th statement I said at least could not be -- or wasn't sufficiently established as misleading in the Complaint.  Obviously, whether that turns out to be true or not, obviously, it may be subject to further discovery, I don't -- I can't recall now what specifically

the facts were.

But, again, that's just one factor.  It doesn't mean -- and I think you said -- I think you were suggesting that somehow that one factor alone is determinative, and I don't think it is.

And then the other factor, which is whether sales occurred shortly before certain corrective disclosures or materialization of the alleged risk and whether sales were made pursuant to trading plans.

And so the next factor which is:  Did that sale proceed a corrective disclosure, and as I said before, proceeded the April disclosure?

Now, is that soon enough in time?  I guess that is a factual debate, but I think putting together all those factors especially the large-scale selling that happened, and I misspoke earlier when I said that there was only one other sale during the time frame of 2016 to '19; that was the only sale during that period of time.

So that seems significant in and of itself especially when you have happening all around it, during that period of time, this governmental action that's anticipated and that there is some indication, based on the allegations, that defendants knew about and knew was going to have a severely negative impact on their business, as indicated by what they told Deutsche Bank on the day of the

sale itself.

Is it a smoking gun, per se, the timing? No. But it is certainly a factor amongst many that I think are sufficient, again, to let the case go forward on the claim to establish a plausible inference that there was improper insider trading.

So that's where we are.

Like I said, that's a bit of a belts and suspenders approach, because, remember, I still am not striking or thinking it appropriate to strike or finding it appropriate to strike the -- we'll just call them -- anonymous employees' information, but I am also saying that even if I were to strike it, I still, as I did before, think that the Complaint is enough.

And you really are arguing reconsideration just now, although that wasn't in your papers specifically and -- but I still don't believe that that's a sufficient reason to dismiss the Complaint or to -- this doesn't affect that part of the analysis, but to exclude the former employees' information, which is corroborative of the alleged knowledge on the part of the alleged insiders who sold the stock, the Gaotu stock.

All right. I just want to make sure I have that right. Okay.

So you have my ruling. And I am denying the

motion to dismiss.  I am denying what is either a Rule 12 as motion to strike or a Rule 11 motion, even though I know you are not moving for sanctions, Mr. Griffin, but a motion based on a violation of Rule 11.  And as I said before, I think you folks should go forward and try to work out the discovery issue so that you can move the case along and get to the bottom of the actual facts.  I trust that Judge Pollak will attend to that quickly.

I think it's possible the case might be reassigned to a new magistrate come the new year, I don't know if Judge Pollak has alluded to that, because she is retiring.  So I am sure you will be in good hands whoever picks up the case.

And that concludes the proceeding unless anybody wants to say anything further, just to be on the record.

Mr. Fumerton?

MR. FUMERTON:  No, Mr. Griffin, go ahead.

MR. GRIFFIN:  Sorry, just one last point, Your Honor.

In light of Your Honor's ruling and the split of authority within the circuit on this issue, defendants would request permission to certify this issue for interlocutory appeal.  We are happy to brief that request, if Your Honor prefers, but I just wanted to put it out there on the record now.

THE COURT:  And which is "this issue"?

MR. GRIFFIN:  The strike, the motion to strike issue, the -- what you want to call the strike Rule 11 issue, whether plaintiffs didn't have to even know who these witnesses were or attempt to speak to them before relying on them in the Amended Complaint.

THE COURT:  Okay.  Why don't you brief that, then, if you want to appeal this interlocutorially.

MR. GRIFFIN:  Okay.

THE COURT:  Because I certainly would like to understand better why this needs to go up to the circuit now or why you think there is actually a split.  I don't perceive there is one in our district -- I mean, I'm sorry, our circuit -- that's what you are referring to, not a split with the Seventh Circuit, for example, right?

MR. GRIFFIN:  No, that's correct, Your Honor.

THE COURT:  Okay.

MR. GRIFFIN:  I am referring more to Judge Engelmayer, *Millennial Media*, Judge Kaplan in the *Lehman Brothers* case, those decisions, right?  I mean, Judge Kaplan said when citing alleged confidential witnesses in a Complaint, the Rule 11 certification means that counsel has spoken with them and knows who they are.  Right?  That's now -- there's no dispute that plaintiffs here didn't do that.  And so, you know, Your Honor allowing these to go forward, it creates -- it's just a difference of opinion.

PROCEEDINGS                                    38

We think that's precisely the type of issue that warrants an interlocutory appeal.

MR. APTON:  Your Honor --

THE COURT:  Mr. Apton -- I just want to clarify the record.  I don't think it's accurate that the plaintiffs' counsel doesn't know who at least two of the three former employees are.

MR. GRIFFIN:  At the time they filed the Complaint, which is the relevant time period for the analysis.  Right?  This is about the pre-filing investigation, that's what I meant.

THE COURT:  So literally don't know their names or don't know what their alleged position was within the company?  Like their names.

MR. GRIFFIN:  Their names, correct, their identity.  Who these people are.

THE COURT:  But is it true, Mr. Apton, that you knew what their positions were or what they did at the company based on the investigation?

MR. APTON:  Absolutely, Your Honor.  And Mr. Griffin's contention that there is no dispute about his description of the issues is not true either.  And again, Your Honor pointed out there were a distinguished -- a way to distinguish these cases, specifically Judge Kaplan's decision in *Lehman*.  We're not relying on anonymous

witnesses sourced from other complaints; we are relying on witnesses that we spoke with vis-a-vis our investigator.  I can't stop defendants for making this motion for interlocutory appeal, but it would seem to be unnecessary at this point and perhaps a distraction from the merits that we are trying to get at here.

THE COURT:  I am a little concerned that this feels, I have got to be honest with you, like a delay tactic, to get an interlocutory appeal on this issue, when I don't think there is strong caselaw supporting your position.

For example, even in *Lehman*, there is another part of the sentence I think that you quoted which is:  Allowing counsel to rely on confidential witness statements recounted in a separate complaint would provide the Court little assurance that the factual contentions have any evidentiary support.

So as I said before, the caselaw that you rely on -- and I don't know if this is going to be the same caselaw that you say creates some sort of split within the circuit that's relevant to the facts of this case -- relates to cases where, and Lehman is one of them, where the plaintiffs' counsel relied on other complaints without confirming who the sources were or the veracity of the allegations provided by these confidential sources.  I think

PROCEEDINGS                                40

that is a markedly different factual situation.

So I have to tell you, you can file what you want to, but I am extremely unlikely to grant, certify this question for interlocutory appeal because I just think that the cases you are relying on are different, factually different and distinguishable in a material way.  So I don't think there is a true split in terms of my ruling from these other decisions, including Judge Engelmayer in I think it he was *Millennial*, because, as we discussed, it was dicta in his decision, as I recall.

MR. APTON:  Your Honor, if I may?  When we do seek these motions for interlocutory appeal, they are often accompanied by motions to stay the discovery and we would hope that defense counsel would not take that approach here especially in light of Your Honor's comments.

THE COURT:  Well, I have a feeling they will.  I will certainly tell the Magistrate Judge that I don't think it's appropriate, especially when one of the issues they are complaining about is not getting the names of the anonymous witnesses and you are at the point of discovery where you are negotiating disclosing the names of those witnesses.  So I find the argument, especially on an interlocutory appeal, a bit disingenuous if you want to then stay discovery and argue about whether or not the plaintiffs' counsel, not knowing the name, just the name, at the time of filing the

PROCEEDINGS                                                    41

complaint should be a reason to then send this case up on interlocutory appeal.

Again, I cannot help but feel that this is just a delay tactic and I am not inclined to grant it for that reason because I just don't perceive that there is a genuine split based on my decision vis-a-vis the other decisions in a factually different situation by other district judges in the circuit. And if it's accompanied by a request to stay discovery, when you are at the point of actually getting the names of those witnesses you claim have been withheld from you in some way or that the plaintiff should have known at the time of discovery but certainly are willing to disclose and provide to you now, it feels, to be honest, a little disingenuous. That's my concern. But obviously lawyers have to make the arguments they want to make. And if you want to move for interlocutory appeal, go ahead and file your briefs. I will give you 30 days to do that. Or actually, let's make it -- it's a holiday. So how about two weeks plus one week for the holiday, so three weeks from now because we should move this quickly if I am going to consider it. And then I will give Mr. Apton and his associates two weeks to respond to that. And then I will rule on it. But if there is a motion to stay before the Magistrate Judge, I am going to give my advice, although I will leave it up to the magistrate, that I don't think it's

appropriate to do so, especially if the whole point of this is to give you the names of those yet-unidentified employees.

MR. GRIFFIN:  Understood, Your Honor.

And to be clear, we don't object to Mr. Apton providing those names at any time, stay or no stay.  They are certainly free to do that.  We welcome those names. That's not what we are trying to avoid here.

THE COURT:  Okay.  All right.

So three weeks from now.

Ari, do you have a date for me?

THE CLERK:  I am pulling that out right now.  One second, please.

THE COURT:  January 12th.  Is that enough time, Mr. Griffin and Mr. Fumerton?

MR. GRIFFIN:  Your Honor, if we can get another week in light of the holidays, that would be great.  I think Your Honor initially said 30 days and we actually kind of backed to 21, but we'll obviously move whenever the Court needs us to move.

THE COURT:  So January 19th.  And then I will give the plaintiffs, how about, then, three weeks to --

MR. GRIFFIN:  No objection.

THE COURT:  -- February 9th.

Is that enough time, Mr. Apton and counsel?

PROCEEDINGS                    43

MR. APTON:  Yes, Your Honor.  Thank you very much.

THE COURT:  If you need a little more time, obviously, confer with Mr. Griffin and hopefully you can agree on that and let me know.

Okay.  You have my ruling on this.  I will -- I can't say I am looking forward to seeing it, but you will submit what you are going to submit, Mr. Griffin, and then I will hear from both sides on this interlocutory appeal issue.

As I said before, and I am not making it any secret, I will certainly tell the Magistrate Judge that I would prefer that discovery not be stayed while this issue is being resolved, but I will let the Magistrate Judge handle that --

MR. GRIFFIN:  Understood.

THE COURT:  -- if there is such a request to stay discovery.

Have a good holiday, everybody.  Thanks so much.

(Matter concluded.)

*    *    *    *    *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Jamie Ann Stanton                December 22, 2025
_____        _____
JAMIE ANN STANTON                           DATE

Jamie Ann Stanton, RMR, CRR, RPR
Official Court Reporter